11L 533
14L 145

TROTLINGER *v.* EAST TENNESSEE, VIRGINIA & GEORGIA
RAILROAD COMPANY.

1. RAILROADS.  *Schedule regulations.*  A railroad has the right to make reasonable regulations for running its trains, and if a purchaser of a ticket has notice of same, or the railroad company had given such publicity to same in the ticket office, and by posters in the cars, that a person of ordinary intelligence, by the use of reasonable care and caution, would or might obtain all requisite information, then he is bound by the regulations.

2. SAME.  *Waiver by railroad company of rights under schedule.*  The railroad company did not waive its rights under such regulations by the conductor punching and taking up the ticket after having told the holder that the train did not stop at his place of destination, the ticket holder being on a train which, according to the schedule, did not stop there.

3. SAME.  *Waiver.*  There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other.

*Statement of case.*  The plaintiff purchased a ticket at reduced rates from agent of defendant at W to go to N and return, signing a contract endorsed on the ticket to make a continuous journey each way.  By the regular schedule for several months the mail trains at night did.

not stop at W; the plaintiff resided near W, and was frequently there, but testified he did not know said mail train did not stop there, and had seen notices and posters in the depot, but had not read them. On his return trip he got on said mail train at C and came to K, where a new conductor took charge of the train, to whom plaintiff presented his ticket, when said conductor told him the train did not stop at W, and he could not put him off there. Plaintiff requested a check to get off at M, which was refused. The conductor punched and took up the ticket. The train did not stop at W but went on to R some miles beyond, the conductor exacting regular fare beyond W. *Held,* the plaintiff was not entitled to recover.

### FROM GRAINGER.

Appeal in error from the Circuit Court of Grainger county. J. G. Rose, J.

J. P. Evans for Trotlinger.

W. M. Baxter and J. K. Shields for Railroad.

Freeman, J., delivered the opinion of the court.

On May 6, 1880, plaintiff purchased a ticket from the agent of defendant at Whitesburg, East Tennessee, to go to Nashville, Tennessee, and return, the purpose being to attend the "Exposition" at the latter place.

An agreement, as part of the contract on the ticket, contained the following stipulations: "In consideration of the reduced rate at which this ticket is sold, I agree to the following restrictions and conditions. That I will make a continuous journey, going directly through to destination without stopping over at any intermediate point longer than the schedule requires." On return trip the stipulations are: "I will commence the return journey on the date of the agent's stamp on return

Trotlinger v. Railroad.

coupons, and go directly through to destination without stopping at any intermediate point longer than the schedule requires; the ticket to be void if not used before May 30, 1880, and void if conditions not conplied with." Signed by plaintiff and general ticket agent.

It appears that by a published schedule, announced to the public in the form of a printed notice fastened up in depots, or railroad offices, as well as in the cars of the company, the company's schedule for running its trains, showed that the mail trains at night did not stop at Whitesburg. This was the regular schedule, and had been since August, 1879. Plaintiff resided one mile from Whitesburg at date of purchase of ticket, and had probably done so for some time before, but only half mile from the track of the road, in sight of it, as he says. He was frequently in Whitesburg, but says he did not know the mail train did not stop there, had seen notices and posters in depot, but had never read them.

There was at the time, by the regular schedule, a train of the company going east—a mixed train—with passenger cars attached, which did stop at Whitesburg.

On plaintiff's return trip he got on defendant's cars at Chattanooga, came on to Knoxville on the mail train. At Knoxville a new conductor took charge of the train. When he went through the cars for tickets plaintiff presented his ticket, and the conductor told him the train he was on did not stop at Whitesburg, and he could not put him off there. Plaintiff requested a check to get off at Morristown, but the conductor re-

fused.    He however punched and took up his ticket.
The train did not stop at Whitesburg, but went on to
Rogersville junction, some miles beyond, taking plaintiff,
the conductor exacting the regular fare for the addi-
tional transportation.

This suit is brought to recover damages for failure
to put plaintiff off at Whitesburg, and for trouble and
inconvenience resulting from being put off at the point
further on from his regular stopping place.

The general rules of law governing the case were
stated by his Honor, as to the right of the company
to make reasonable regulations for running its trains.
He held that the ticket purchased was subject to these
regulations, and they made part of the contract, pro-
vided defendant had notice of such schedule regulations,
or such publicity had been given them in the ticket
office of the company and by posters in the cars (as
was done in this case), that a party of ordinary in-
telligence, by the use of reasonable care and caution,
would or might obtain all requisite information as to
the matters involved, then he was bound by these reg-
ulations: See Wait's Act. and Def., vol. 2, p. 67, and
cases cited.

In view of these principles, his Honor charged the
jury that the company was not bound to transport the
party under this ticket, on the mail train, the schedule
of which did not provide for stopping at Whitesburg.
In this he was clearly right, as under the facts here
found the passenger has no right to demand a change
of the schedule of the company in his favor, nor was
such a thing involved in the contract made for his

transportation; on the contrary, by its fair meaning, taken in consideration with the circumstance, such a view was of necessity excluded.

The case, however, went off below as well as before the Referees, on the charge of his Honor, as to a waiver by the company on this point, by the action of the conductor in taking up and punching the ticket of plaintiff, under the facts shown in the testimony on this subject.

His Honor said, on this question, that it was competent for the company to waive the implied condition of requiring the party to conform to its schedule regulation, and if defendant, through its conductor, punched and took up the ticket and permitted the plaintiff to have passage to Whitesburg on that ticket, it was the duty of defendant to stop its train and land the plaintiff at that place. So he held, that while the company was not bound to transport the party on this train, yet if the defendant, by its conductor, undertook and did transport him, it was bound to stop and put him off. On this point in the charge the jury have found their verdict, and on the approval of this proposition as applicable to the facts of the case, the Referees have based their report of affirmance.

The jury understood, it is evident, and might well have understood his Honor to mean, that under the facts shown, if the conductor failed to put plaintiff off the train, when he called for his ticket, but permitted him to remain until he arrived at the regular stopping station beyond Whitesburg, then this amounted to a waiver, and bound the company to stop at Whitesburg.

But in this his Honor overlooked an essential part of the case, and that is, that the conductor expressly told plaintiff that the train did not stop at Whitesburg, and that he could not put him off there. He has treated this as unimportant on the question of waiver, and made it turn entirely on the fact of carrying the party on, or rather, not putting him off the train.

Without discussing the question of the power of the conductor to waive the implications of the contract, it is clear there could be no waiver unless it was so intended by one party and so understood by the other; or else one party has so acted as to lead the other to believe he intended to waive his right, and the other party has been misled by it. This last, on the principle of estoppel, in such a case, always involving an element of fraud or bad faith.

But here the conductor expressly, as we have said, refused to consent to put him off at Whitesburg, telling him the train did not stop there. It was the duty of plaintiff then, if he did not wish to go on under this state of facts, to demand that he be put off where he was or at the first station, he having gone on the train innocently. If he continued on the train, he did so under the implied understanding, with fair notice of facts to him, that he was transported subject to the schedule of the company as to the point of stoppage. This is the only fair meaning of what was done.

His Honor holding the opposite to this was in error, as well as the Commission of Referees, for which the judgment must be reversed and the case remanded for a new trial.