ROSCOE H. HULL *vs.* BOSTON AND MAINE RAILROAD.

Worcester.    October 3, 1911. — October 17, 1911.

Present: RUGG, C. J., HAMMOND, BRALEY, & SHELDON, JJ.

*Railroad*, Enforcement of reasonable rule as to dogs in passenger cars. *Trespass, Ab initio. Assault and Battery. False Imprisonment. Dog.*

While it is reasonable for a railroad company to make a rule excluding dogs from its passenger cars and to insist that a passenger, who is upon such a car with a dog, either shall comply with the rule or leave the train, a conductor who is a special police officer is not justified in placing a passenger refusing to comply with such a rule under arrest so long as the passenger is not guilty of disorderly or noisy conduct or of a refusal to pay his fare; and, if without a warrant the conductor attempts to make such an arrest and the passenger is removed from the train by him and other agents of the company without the use of excessive force and is conducted by the other agents of the company through the streets of a town and delivered to a police officer who refuses further to hold him under arrest, the company is liable to the passenger for the duress and indignity to which he was subjected, not only while he was on the train but afterward, and for all the force used upon his person in removing him from the car and until he was released from custody.

TORT for alleged assault and battery upon and false imprisonment of the plaintiff while he was a passenger of the defendant. Writ dated September 24, 1909.

The answer of the defendant, as amended, contained a general denial and allegations that, " if the plaintiff shall prove that he was ejected " or " detained," " then the defendant answers that he was rightly ejected " or " detained and with the use of no more force than was necessary."

In the Superior Court the case was tried before *Aiken*, C. J.

The plaintiff's evidence tended to show that he became a passenger upon one of the defendant's trains at Worcester to travel to Charleston, New Hampshire, to which point he had a valid ticket which he presented to the conductor who " punched it through to Winchendon; " that the plaintiff had with him a small dog; that when the conductor took the tickets he told the plaintiff that he would have to take the dog into the baggage car because it was the rule of the railroad; that the plaintiff declined to do so; that before reaching Gardner the conductor again came to the plaintiff, showed him a copy of the rule as to dogs printed on a time-table, and asked him if he would take his dog into the baggage car; that the plaintiff replied that he would not. The rule, which was printed on the time-table that the conductor showed the plaintiff, was as follows : " Special information for passengers. Dogs will not be permitted in passenger coaches, but will be checked and transported in baggage cars, at owner's risk, upon payment of a minimum charge equal to 100 pounds of excess baggage for each animal."

The plaintiff's evidence further tended to show that at Gardner the conductor again came to the plaintiff and said : " There is fifteen cents fare due on that dog. You are evading fare. The next station is Heywoods and you will have to get off; " that the plaintiff thereupon put his hand in his pocket and said, " If there is fifteen cents due on the dog, I will pay it," and that the conductor replied, " I shan't take it. You will have to get off; " that upon arriving at the next station the conductor returned with the brakeman and the ticket agent and said, " Are you going to get off; " that the plaintiff replied, " No, my ticket takes me through to Winchendon," and that the conductor replied, " It don't make any difference. You will have to get off; " that the plaintiff then asked the conductor why he would have to get off and he replied, " You are evading fare; " that the plaintiff then said, " I offered to pay the fare of the dog such as

due," but the conductor said, "It doesn't make any difference. You will have to get off, and if you don't get off, I shall arrest you;" that the conductor was a railroad police officer;* that the plaintiff asked him what he would arrest him for, and the conductor said, "For evading fare," and thereupon put his hand upon the plaintiff's shoulder and said, "Under arrest;" that the plaintiff's wife then picked up the dog and said that she would take him into the baggage car rather than have so much trouble; that the conductor replied, "It is too late.  He is under arrest and has to get off;" that he then motioned to the brakeman and the station agent and all three took hold of the plaintiff and pulled him down the aisle and out of the train, and that then the ticket agent took the plaintiff by the arm, led him down a public street to a square and there, in the presence of a crowd of people, demanded that the chief of police arrest the plaintiff and lock him up; that the chief of police asked why the plaintiff should be locked up and the station agent replied, "For evading fare;" that the plaintiff then showed the chief his tickets and explained the situation, and the chief declined to receive the plaintiff as a prisoner until the station agent should procure a warrant for his arrest; that the station agent then mingled with the people and went away, leaving the plaintiff.

At the close of the evidence, the plaintiff asked the presiding judge to give to the jury, among other instructions, an instruction that the defendant had shown no justification for the assault of its officers and agents upon the plaintiff, and that they must find for the plaintiff.  The judge refused the request, and among other instructions charged the jury in substance, that while the defendant's rule as to dogs was a reasonable one which it had a right to enforce, the situation presented by the evidence did not come within that class of offenses, refusal to pay fare or noisy or disorderly conduct, that would have given the conductor a right to arrest the plaintiff; that, upon the plaintiff's refusal to have the dog in the baggage car, the defendant had a right to put him off the train at the next stopping place, using no more force in kind or degree than was reasonably necessary to effect the removal. "It does not make any particular difference what name was given

---

* See R. L. c. 108, §§ 13–20.

to the right by the railroad officer who took the man from the car. If the doctor [the plaintiff] refused to have his dog transported in the baggage car, then there was the right of removal. And if there was no more force used in effecting the removal of the doctor from the car than was reasonably necessary, then, gentlemen, up to that point in the case, there is no responsibility for damages. . . . Now, when Dr. Hull was upon the station platform then the rights of the railroad by way of removal were ended . . . anything further in the way of conducting the doctor through the street or streets of Gardner or any public part of Gardner for the purpose of taking him to court or to find a police officer was in excess or was unauthorized by the law in this case. And if you find that in leading or conducting the doctor through the streets of Gardner he sustained damage, then there is a right to damages in that aspect of the case. Now, you have the right if you reach this aspect of the case to take into consideration any feeling of indignity or chagrin that a man would naturally, ordinarily and reasonably feel by reason of such conduct as appears in this case."

The jury, in answer to special questions propounded to them by the presiding judge, found that in removing the plaintiff from the car no more force was used than was reasonably necessary, and that the plaintiff while in the car did not conduct himself in a noisy or disorderly manner.

The jury found for the plaintiff in the sum of $30; and the plaintiff alleged exceptions to the refusal to give the instruction asked for by him and to the instruction given that it did not make any particular difference what name was given by the conductor to the right to remove the plaintiff from the car.

*H. W. Blake*, for the plaintiff.

*C. M. Thayer*, (*A. H. Bullock* with him,) for the defendant.

BRALEY, J. The plaintiff, having been accepted as a passenger, was lawfully in the car, and the defendant had undertaken to provide reasonable facilities for his transportation in safety and to protect him from violence, annoyance and discomfort whether arising from disorderly conduct of fellow passengers, or the wrongful interference of its employees, or the intrusion of strangers whose presence by the exercise of due care could have been anticipated and prevented. *Jackson* v. *Old Colony Street*

*Railway*, 206 Mass. 477, 485, 486. *Exton* v. *Central Railroad*, 33 Vroom, 7; 34 Vroom, 356. *New Jersey Steamboat Co.* v. *Brockett*, 121 U. S. 637. In the performance of this duty the railroad had the right to establish and enforce reasonable regulations for its own protection in the management of its business. St. 1906, c. 463, Part II, § 181. *Commonwealth* v. *Power*, 7 Met. 596. *O'Neill* v. *Lynn & Boston Railroad*, 155 Mass. 371. *Cutts* v. *Boston Elevated Railway*, 202 Mass. 450, 455.

It is common knowledge that for various reasons, which may be either fanciful or well founded, the presence of dogs even when accompanied by their owners or custodians often causes passengers serious discomfort and annoyance, or apprehension of bodily danger; and their exclusion from its passenger coaches while permitting them to be carried for hire in the baggage cars is not an unreasonable exercise of this authority. *Commonwealth* v. *Power*, 7 Met. 596, 601. *Honeyman* v. *Oregon & California Railroad*, 13 Ore. 352. *Gregory* v. *Chicago & Northwestern Railway*, 100 Iowa, 345. The plaintiff having been informed of the regulation was bound by it, and when requested by the conductor to remove the dog in his possession and control to the baggage car and to make the necessary payment, his refusal would have warranted his expulsion by the use of sufficient but not excessive force if, when the train stopped at the next station, he had refused to depart. *Commonwealth* v. *Jones*, 174 Mass. 401. *Johnson* v. *Concord Railroad*, 46 N. H. 213. *Whitesell* v. *Crane*, 8 W. & S. 369. *Trotlinger* v. *East Tennessee, Virginia & Georgia Railroad*, 79 Tenn. 533. *Jackson* v. *Old Colony Street Railway*, 206 Mass. 477.

But upon the uncontradicted evidence the conductor, who also was a railroad police officer, after a somewhat prolonged colloquy with the plaintiff, instead of taking proper measures to enforce the regulation exhibited his badge of office and informed him that he was placed under arrest "for evading fare." By the common law this restraint was illegal; and under R. L. c. 108, § 18, authority to arrest without a warrant is conferred only where the passenger refuses to pay his fare or is noisy or disorderly. The plaintiff, however, in refusing to obey the regulation was not guilty of an evasion of his fare, and throughout the controversy he was not charged with unseemly behavior. No justification

having been shown for the duress and indignity to which he was subjected not only while on the train but at the station, or for the force used upon his person in removing him from the car and until he was released from custody, the defendant is responsible in damages, whether the conductor acted as its servant or as a special police officer. It also is answerable for the conduct of its brakeman and station agent who rendered assistance and participated in the assault and false imprisonment. *Brock* v. *Stimson,* 108 Mass. 520, 521. *Jackson* v. *Old Colony Street Railway,* 206 Mass. 477. *Horgan* v. *Boston Elevated Railway,* 208 Mass. 287. R. L. c. 108, § 20.

It is therefore clear that the plaintiff's second request, 'that the defendant had shown no justification for the assault, was in accordance with the evidence; and the instructions to which he excepted, that the defendant would be liable only for the use of excessive force in the plaintiff's ejection and for the wrongful restraint of his liberty after he reached the station platform, were insufficient.

*Exceptions sustained.*