FIRST NAT. BANK OF MUSKOGEE v. TEVIS *et al.*

No. 1088.   Opinion Filed November 14, 1911.

(119 Pac. 218.)

1. APPEAL AND ERROR—Review—Harmless Error—Admission of Evidence. The evidence of T. that he delivered the box of jewels to the assistant cashier of the bank being positive and unequivocal and uncontradicted, the admission of incompetent evidence tending to corroborate such witness on that point, being merely cumulative, and there being no contradictory evidence offered on that issue, will not operate as reversible error.

2. DESCENT AND DISTRIBUTION—Rights of Heirs—Right of Action for Personalty. Under the laws existing in the Indian Territory at the time of the erection of the state (Mansf. Dig. sec. 2522 [Ind. T. Ann. St. 1899, sec. 1820]), the personal estate not disposed of nor otherwise limited by marriage settlement, when a person dies intestate, descends to be distributed in parcenary to his or her kindred, male and female, subject to the payment of his or her debts, etc.

(a) There being no outstanding debts against such estate, and neither letters of administration applied for nor granted, the heirs may maintain an action to recover such personalty.

3. APPEAL AND ERROR—Instructions—Requests—Necessity. An instruction that "it is the duty of the bank to employ fit men, both in ability and integrity, for the discharge of their duties," is not reversible error; the court not being requested to charge as to what degree of care should be exercised in making such employment.

4. BANKS AND BANKING—Special Deposits—Liability for Loss. A national bank received a certain lot of diamonds on special deposit, it being the custom of such bank to take such special deposits from its customers, which was known and acquiesced in by the directors. The diamonds were lost through the gross negligence of the employees of the bank. Held, that the bank was liable for the value of said diamonds.

(Syllabus by the Court.)

*Error from District Court, Muskogee County; John H. King, Judge.*

Action by Myra Tevis and others against the First National Bank of Muskogee. Judgment for plaintiffs, and defendant brings error. Affirmed.

*J. W. Zevely,. J. M. Givens,* and *Edgar Smith,* for plaintiff in error.

*Bailey & Wyand,* for defendants in error.

WILLIAMS, J. This proceeding in error is to review the judgment of the lower court, wherein the defendants in error, Myra Tevis, Elizabeth Tevis, Buell Tevis, and Walter Stone Tevis, minors, by their next friend, William T.. Tevis, as plaintiffs, sued the plaintiff in error, as defendant, declaring in their petition that on the 14th day of March, 1905, they were the owners of certain diamonds of the value of $825, which were, by their said next friend, placed in the custody of said defendant for safe-keeping, with the agreement and understanding that the same were to be returned to the plaintiffs on demand; that during the month of June, 1907, plaintiffs, through their said next friend, demanded the delivery of said diamonds, etc., from said defendant, and frequently thereafter demanded the same; but that defendant declined and refused to deliver the same or any part thereof to plaintiffs.

The evidence on the part of plaintiffs tended to prove that the diamonds in question belonged to the mother of said minors; that she died on March 14, 1905, intestate; that no letters of administration as to said estate had ever been applied for or granted; that no debts were outstanding against said estate; that said plaintiffs were the only heirs thereto; that it was the custom of the officers of said bank to receive and keep such things for safe-keeping, which was acquiesced in by the board of directors.

Counsel for plaintiff in error in their brief insist that the court erred in permitting W. T. Wisdom, the assistant cashier of said bank, to testify as follows:

"Q. Well, just tell how you happened to see it again (re-

ferring to the box containing the diamonds). A. Why, Mr. Tevis came to my window and said he wanted it, his people wanted to examine the contents of the box (containing the jewels), and told me to let him take it over home and he would return it. Q. How long until he returned it, if you remember? A. I don't remember whether he ever did return it or not, but I think he did; I am pretty sure that he did return it. Q. Well, don't you remember he did return it and handed it over to you? A. I remember his coming and getting it all right, and I feel sure that he did return it to me. Q. Then what did you do with it when he returned it? Mr. Smith: I object to the answer and move it be stricken because it does not show knowledge on the part of the witness. By the Court: What do you say about it, Mr. Wisdom? Witness: I just say I feel sure that he did return it to me. Q. Well, what did you do with it when he returned it to you? By the Court: Are you able to say any different from that, Mr. Wisdom? Witness: No, sir."

W. T. Tevis, the next friend, also, without contradiction, testified that he left the package of diamonds with Mr. Dabbs, the president of the bank; that thereafter he got the package from Mr. Wisdom, and returned it to him. He is also corroborated in part by his daughter, Miss Sallie Tevis.

McKelvey on Evidence, at page 390, § 243, says:

"It has been seen in the rules hertofore discussed in the chapter on 'Hearsay' that a witness is expected to testify from his own knowledge. In the examination of witnesses much difference is brought out betwen the ideas and language of various witnesses in reference to their knowledge of the facts about which they are questioned. One witness will know a thing, another will have a recollection, and another will only go to the extent of giving his impression as to it. The chances are that all mean the same. Knowledge consists of an impression on the senses; and when the circumstances show, as they usually will, that what a witness calls an impression is not an opinion based on information, but the result of his own observation, such impression is admissible. As has been said: 'No line can be drawn for the exclusion of any record left upon the memory as the impress of personal knowledge because of the dimness of the inscription.' And a witness' knowledge, however uncertain, may always be introduced for what it is worth."

With the positive and unequivocal evidence of W. T. Tevis

that he returned the box of jewels to the bank, delivering the same to W. T. Wisdom, the assistant cashier, and no witness denying this fact, the evidence of the assistant cashier was simply corroborative, and therefore, if it was incompetent, it could not operate as reversible error.

The evidence of the assistant cashier as to the custom of the bank in receiving packages and papers and the like for safe-keeping from individual customers of the bank was competent. It is not essential that such evidence be proved by one of the directors. Any witness who knows the custom may testify as to what it is. The other objections as to the introduction of evidence are without merit.

The defendant asked the following instruction:

(a) "You are instructed that before plaintiffs can recover they must show title in themselves to the property which is the subject of the controversy. The fact that the mother was shown to have owned the property in her lifetime does not, in this case, show the title to said property in said plaintiffs, and the court instructs you as a matter of law that your verdict cannot be for the plaintiffs in this action, but must be in favor of the defendant."

This instruction was refused. On the contrary, the court instructed the jury as follows:

(b) "The court instructs the jury that if you believe from the evidence that the plaintiffs are the children of Bell R. Tevis, deceased, and that the mother died without a will, and was the owner of the diamonds described in plaintiffs' petition herein, then and in that event the plaintiffs became the owners of the diamonds at the death of their mother by inheritance."

The court further instructed the jury:

(c) "The jury are instructed that it is the duty of a bank to employ fit men, both in ability and in integrity, for the discharge of their duties, and if they believe that the defendant did not do this, and that in consequence of gross negligence on the part of the defendant in employing that character of men the defendant is unable to return the diamonds to plaintiff, their verdict will be for plaintiff."

Section 2522, Mansfield's Digest 1884 (section 1820, Ind. Ter. Statutes 1899), which was in force in Indian Territory at the time of the death of the mother of the plaintiffs, provides:

"When any person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts .and the widow's dower, in the following manner: First: To children, or their descendants, in equal parts.    *    *    *"

We think the court properly refused the instruction (a) requested by the plaintiff in error. The undisputed evidence showing that the plaintiffs were all the children and heirs of the intestate, instruction (b) is without prejudicial error.

Paragraph 3 of the court's instructions is as follows:

"The jury are further instructed that if they believe from the evidence that the defendant accepted said diamonds as a special deposit for safe-keeping, that it was the duty of the officers and agents of said defendant to exercise reasonable care in keeping and returning the same upon demand, and if from a preponderance of the evidence it appears that some of the officers or agents of said defendant did not exercise reasonable care in keeping said diamonds and returning the same, and that as a result of this lack of reasonable care the defendant is unable to return the same, their verdict will be in favor of the plaintiff for the value of the diamonds."

Paragraph 7 of the charge complained of is as follows:

"The jury are instructed that it is the duty of a bank to employ fit men, both in ability and in integrity, for the discharge of their duties, and if they believe that the defendant did not do this and that in consequence of gross negligence on the part of the defendant in employing that character of men the defendant is unable to return the diamonds to plaintiff, their verdict will be for plaintiff."

Plaintiff in error insists that the court should have instructed the jury that the measure of the duty of the bank in employing fit men, both in ability and integrity, was to exercise reasonable care, but nowhere did it request an instruction as to what the measure of this duty was.

In *Moore v. O'Dell*, 27 Okla. 194, 111 Pac. 308, it is said:

"As to instruction 'D,' relating to the burden of proof, it states the general rule. Counsel for plaintiff in error appears nowhere to have requested the court to instruct the jury as to what

presumption arose from the conveyance as to the terms of the trust having been complied with. Not having made such request, he is not entitled on review here to complain."

Not having requested such supplementary instruction, plaintiff in error's contention is without merit.

Upon plaintiff's theory of the case, and under the jury's finding, a recovery may be sustained. *National Bank v. Graham*, 100 U. S. 699, 25 L. Ed. 750; *Manhattan Bank v. Walker*, 130 U. S. 267, 9 Sup. Ct. 519, 32 L. Ed. 959.

The judgment of the lower court is affirmed.

All the Justices concur.