## WESTERN UNION TELEGRAPH CO. v. FOY.

No. 1786. Opinion Filed May 14, 1912.

(124 Pac. 305.)

1. **TELEGRAPHS AND TELEPHONES—Operation—Failure to Deliver Message—Damages.** Plaintiff, in an action for damages against a telegraph company, is not entitled to recover for mental anguish and suffering occasioned by negligence in the delivery of a telegraph message. Neither can a recovery be had for physical sickness resulting from a shock sustained at not being able to attend the funeral services of a deceased relative.

2. **SAME.** The fact that telegraph companies are by law in this state made common carriers, and must use the utmost diligence in the transmission and delivery of messages entrusted to them, does not change the rule at common law, with reference to their liability for damages, where the injury sustained is not the proximate and natural result of the negligent act.

(Syllabus by Sharp, C.)

*Error from District Court, Atoka County;*
*Robt. M. Rainey, Judge.*

Action by Helen M. Foy against the Western Union Telegraph Company for damages on account of failure to promptly deliver a telegram advising plaintiff of her brother's death. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Shartel, Keaton & Wells, J. G. Ralls,* and *George H. Fearons,* for plaintiff in error.

*D. H. Linebaugh,* for defendant in error.

Opinion by SHARP, C. Numerous errors are charged to have been committed by the trial court, but one of which it will be necessary to consider at any length. Should the trial court have sustained the demurrer to the plaintiff's evidence?

We may first consider that it may now be regarded as the law in this state, in harmony with the weight of authority elsewhere, that damages are not recoverable for mental distress

alone, caused by negligent delay in delivering a telegram. *But-ner v. Western Union Telegraph Co.*, 2 Okla. 234, 37 Pac. 1087; *Western Union Telegraph Co. v. Chouteau*, 28 Okla. 664, 115 Pac. 879; *Thomas v. Western Union Telegraph Co.*, 30 Okla. 63, 118 Pac. 370. It is, however, insisted on behalf of defendant in error that it does not follow that damages may not be recovered where sickness or physical suffering is consequent upon mental anxiety or anguish, or, as charged in the petition, that, by reason of the willful, wanton, and gross negligence of the company in not correctly and promptly transmitting and deliver-ing the telegram, plaintiff was prevented from attending her brother's funeral, and was made sick and forced to take her bed, and sustained a great nervous shock, and by reason thereof suffered great mental anguish and pain. The distinction made is important, and we shall turn first to the testimony to ascertain whether the allegations of the petition are sustained by the testimony. The telegram was not delivered until the day following its receipt at the Atoka office. Mrs. Foy first received notice of her brother's death by telephone communication at about 10 o'clock on the night of June 10th, the day the message, incorrectly addressed, was received at the Atoka office.

The following questions and answers are believed to be all that is to be found in the record touching plaintiff's physical or mental condition after being advised of her brother's death:

"Q. I will ask you what did you do after receiving this first telephone information in regard to the death of your brother, the time of burial? A. It is almost impossible to tell. I was so completely shocked. Mr. Foy was gone—at lodge I think, and did not come. It was a great shock to me. Of course, I did not know what to do, but I studied the schedules of the trains, and saw then that I could not possibly get to Norman. I do not know what I did do. I just went perfectly wild. I could not stand. I was shut off from my brother forever. Q. Mrs. Foy, what was you physical condition after getting this information? Mr. Linebaugh: I want to show the physical condition afterwards and just before that she was in good condition. This shock caused the illness that immediately followed. A. After I received the message you said? A. Yes. A. I was weak and nervous for weeks and weeks, and was not able to do anything

scarcely at all, because I could not get this death message off my mind. It was continually in my mind day and night, and, of course, I kept on getting weaker and weaker until at last I got into a case of sickness I could not recover from. Q. How long have you been sick, Mrs. Foy? A. It has been seven weeks since I was taken sick. Q. What was your physical condition up until the time you were taken sick? A. I was in very good health. Q. Did you have a physician to attend you? A. No, sir. Q. Had no doctor? A. Not at that time. Q. How long was it after that until you had a doctor? A. Not until seven weeks ago. Q. Who was your family physician? A. Fulton. Q. The case that you had him in was a case of pneumonia? A. That was what the doctor stated. Q. You never studied medicine did you? A. No, sir. Q. When your brother phoned you that your brother Jim was dead, you commenced crying? ·A. Yes, sir. Q. And, of course, you grieved over his death very much? A. Of course. Q. Was your grief made greater by the knowledge that you could not see him before his burial? A. Yes, sir. Q. And from that time until the present you gradually went down until about seven weeks ago, when you went to your bed? A. Yes, sir. Q. Now you stated that because you were not able to be. there at the funeral you grieved over that? A. Yes, sir. Q. If you had been there, you would have grieved also? A. Yes, sir; of course, not so much. Q. The greater part of your grief was caused on account of your brother's death. A. Not being able to see him any more, it seemed to me not forever— Q. Was not the greater part of your grief caused on account of your brother's death? A. Why, yes, sir."

Dr. J. S. Fulton testified that he had been Mrs. Foy's family physician between eleven and thirteen years; that prior to June, 1909, the general condition of Mrs. Foy's health was good; that pneumonia was a germ disease with a local manifestation in the lungs, and that probably no cause contributed towards the development of this disease more than exposure; that great grief might weaken the constitution, and hasten illness. Other testimony given was in the form of answers to abstract questions as to how pneumonia might be contracted. This was all the testimony that was offered in support of the allegations of the injury sustained. Plaintiff's suit was filed September 11, 1909. According to her testimony, she did not call in her family physician until about January 1, 1910, though Dr. Fulton's testimony

fixed the date a few weeks earlier, but months after the action had been instituted. Where physical sickness follows as a result of a nervous shock or of mental anxiety and distress, in the absence of any proof of gross or wanton negligence, is a telegraph company liable for delay in delivering a telegram announcing the death of a relative, whereby and on account of the negligent delay the addressee or party desirous of being communicated with is prevented from attending the funeral service of such relative? The question has not been determined in this jurisdiction.

*Western Union Telegraph Co. v. Crawford,* 29 Okla. 143, 116 Pac. 925, 35 L. R. A. (N. S.) 930, involved an entirely different principle of law, and under a state of facts materially different from those presented for our consideration. A great nervous shock and mental anguish may and often is attended by physical suffering of varying severity and duration. But if the mental injury be such, for which alone no compensation may be allowed, would not the physical depression or suffering, which followed in natural sequence, be equally forbidden by the same rule of law? If no remedy is to be had for the direct result, could it be said with any force of logic or legal right that a remedy would be given for an effect flowing therefrom, and still further removed from the negligent act? If a recovery is denied the primary result, it must follow that the secondary ailment, occasioned by the original shock or mental suffering, would fall also. In such cases the law looks upon the direct physical injury alone, and the proximate consequence of the negligent act, not upon the secondary ailment resulting from the primary suffering. *Curtis v. Western Union Telegraph Co.,* 13 App. Div. 253, 42 N. Y. Supp. 1109; *Kagy v Western Union Telegraph Co.,* 37 Ind. App. 73, 76 N. E. 792, 117 Am. St. Rep. 278.

The plaintiff was the subject of two mental pains—one due to the death of her brother, the other to sorrow on account of not being able to attend the funeral; the latter only being the subject of the action. The defendant was in no wise connected

with the first cause, and it cannot be said that the illness that followed, if due to the original shock or consequent weakening of the system, was caused either by one or the other of the sorrows named. How can it be said that either court or jury can separate that sorrow natural to the death of a loved relation from the added grief and anguish attaching to the inability to attend the last sad obsequies, caused by neglect in the delivery of a message communicating the information? And where a physical breakdown and delayed illness results from such combined causes, how may either say that the illness is the natural and probable result of the grief sustained on account of the failure to be present at the funeral services, as distinguished from the sorrow occasioned by the death? For the latter, there could in no event be a liability, and even though separable, the former would be subject to the objection already indicated, *i. e.,* that the wrongdoer is liable only for the natural and proximate consequences of its negligence. To so hold would be such an invasion of this elementary rule as would tend to, if indeed not, destroy all limitations upon the right of recovery of damages for an injury in any way traceable to, or connected with, a failure to perform a stipulated duty or service.

In *Connell v. Western Union Telegraph Co.,* 116 Mo. 34, 22 S. W. 345, 20 L. R. A. 172, 38 Am. St. Rep. 575, the petition charged that plaintiff "also suffered great anguish and pain of mind and body, and was physically and mentally prostrated when he learned that his child had died and been buried without knowledge on his part of its sickness and death." Said paragraph was stricken out on motion, and the action of the trial court was affirmed on appeal. In *Tyler v. Western Union Telegraph Co.* (C. C.) 54 Fed. 634, a demurrer was sustained to a petition which charged that, on account of the failure to promptly deliver a message advising plaintiff of his son's fatal injury, plaintiff suffered great agony of mind, and was unfitted for attending to his business and had been impaired in his health and strength, and suffered in mind and body. The court said:

"And counsel for plaintiff, as if anticipating this has alleged in his declaration and argued that there has been physical suf-

fering and injury resulting from the mental anxiety of the plaintiff, and undertakes in his argument so to weave the two together as to give the injuries the nature necessary for the maintaining of this action. But the court thinks the sickening of the body in consequence of anxiety of mind is too remote a result of the negligence complained of to give the case the elements which it should possess in order to maintain the action. As has been said by Lord Campbell, quoted by Wharton on Negligence, sec. 781: 'If the wrong and the legal damage are not known by common experience to be usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action.' "

As has been said, damages recoverable in actions of this kind must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract; that is, they must be such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed. *Wilcox v. Richmond & D. R. Co.,* 52 Fed. 264, 3 C. C. A. 73, 17 L. R. A. 804; *Western Union Telegraph Co. v. Hall,* 124 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479; 13 Cyc. 25; 37 Cyc. 1755. See, also, note to *Gibson v. Delaware, etc., Canal Co.,* 36 Am. St. Rep. 807.

Keeping in mind that no recovery can be had for the mental anguish suffered by plaintiff, there is no testimony to support the jury's verdict. It is in evidence that the news of her brother's death caused plaintiff to be completely shocked; that, after receipt of the message, for many weeks she was weak and nervous and unable to work, and grew weaker until physical sickness followed during the latter part of December. This sickness was from six to six and one-half months from the date of her brother's death. Plaintiff testified:

"Q. How long have you been sick, Mrs. Foy? A. It has been eight weeks, seven since I was taken sick. Q. What was your physical condition up to the time you were taken sick? A. I was in very good health."

Until this time no physician had attended her. Dr. Fulton pronounced her ailment to be pneumonia. Remembering that the suffering must be the proximate result of the negligence or default complained of, we conclude that the testimony here wholly failed to make out a case of liability on the part of the company. Physical illness following a nervous breakdown, the result of a nervous shock and mental anguish, attributable to two causes, one only to which the plaintiff in error contributed, gives no ground for the recovery of damages for failure to promptly deliver a message notifying plaintiff of her brother's death. In those jurisdictions denying the right of recovery for mental anguish in such cases we find no case taking so extreme a ground as is urged by defendant in error.

We have treated the action as one arising in tort, and find no evidence justifying the allegation of gross and wanton negligence, though it is clear that plaintiff in error acted negligently in delivering the message. We are therefore of the opinion that the trial court erred in not sustaining and in overruling the demurrer to the evidence of plaintiff, and that the case should be reversed and remanded.

By the Court: It is so ordered.