## CHICAGO, R. I. & P. RY. CO. v. RADFORD.

No. 2313.   Opinion Filed January 7, 1913.

(129 Pac. 834.)

1.   **FALSE IMPRISONMENT—Arrest of Passenger—Tickets.** One entering a passenger train of a railroad company, claiming the right of transportation on a nontransferable ticket issued to another, cannot lawfully be arrested for refusal to pay cash fare upon the train auditor taking up the void ticket.

2.   **CARRIERS—Passengers—Refusal to Pay Fare—Remedy—Ejection —Statutes.** Section 1394, Comp. Laws 1909, provides that a passenger who refuses to pay his fare may be ejected from the vehicle by the carrier at any usual stopping place, or near some dwelling house.

3.   **FALSE IMPRISONMENT—Arrest of Passenger by Train Auditor —Scope of Authority—Carriers' Liability.** A railway company is liable for the acts done by a train auditor acting within the scope of his general authority, in furtherance of the company's business, and for the accomplishment of the object for which the auditor was employed; and where the act done arises out of a controversy over the payment of fare, and consists in procuring an officer to make an arrest of one aboard the train on which the auditor is employed, and such arrest is wrongful, the company is liable in damages for the injuries sustained.

4.   **SAME—Damages—Elements of Damage.** In an action for false
     arrest, the injured party is entitled to recover for the suffering,
     both bodily and mental, which the wrong may have occasioned.
     The injury done by being restrained of one's liberty is akin
     to that suffered from assault and battery.

5.   **TRIAL—Instructions—Request to Charge—Form.** Where a special
     instruction is requested, it is the duty of counsel to prepare and
     submit to the court such desired instruction in writing, properly
     numbered and signed, and, upon timely delivery to the court, re-
     quest that it be given. Upon a failure so to do, where the court
     has given general instructions applicable to the issues and the
     evidence, this court will not consider as error the court's failure
     to instruct of its own motion upon any given proposition.

6.   **FALSE IMPRISONMENT—Excessiveness—False Imprisonment of
     Passenger.** Same as syllabus 12 in Choctaw, etc., Ry. Co. v.
     Burgess, 21 Okla. 653, 97 Pac. 271.

(Syllabus by Sharp, C.)

*Error from District Court, Kingfisher County;*
*A. H. Huston, Judge.*

Action for damages by Hugh C. Radford against the Chi-
cago, Rock Island & Pacific Railway Company. From a judg-
ment in plaintiff's favor, defendant brings error. Affirmed.

*C. O. Blake, H. B. Low,* and *F. L. Boynton,* for plaintiff in
error.

*John T. Bradley, Jr.* and *G. L. Callaway,* for defendant in
error.

Opinion by SHARP, C. On December 3, 1908, plaintiff
purchased of a ticket scalper in the city of Enid, for transporta-
tion to El Reno, the unused portion of a nontransferable ticket
issued by the Southern Pacific Railway Company at Santa Bar-
bara, Cal., on November 26, 1908, to one R. L. Denton, author-
izing certain railroads therein named, including defendant, to
carry the said Denton over their respective lines between said
city of Santa Barbara and Oklahoma City, Okla. Upon plain-
tiff's presentation of said ticket to the train auditor, it was taken
up and the regualr fare to El Reno demanded. This plaintiff
at the time refused to pay, and shortly afterwards was placed
under arrest by a deputy sheriff who was on board the train.

It was charged by plaintiff that the arrest was procured by defendant company acting by and through its auditor. The petition further charged that said auditor, representing said defendant company, "without any right, cause, or excuse, unlawfully and wrongfully abused the plaintiff, and said in a loud tone of voice, which could be and was heard by all passengers in the coach in which plaintiff was riding, that the plaintiff had committed the crime of forgery, and said to plaintiff, 'I will see that you get two years for forgery for this' (meaning by such language to inform the plaintiff that the defendant, the Chicago, Rock Island & Pacific Railway Company, was going to have the defendant imprisoned for a term of two years on the charge of committing the crime of forgery), and said auditor, acting as the agent of the defendant, and for and on behalf of defendant, immediately, after using said language to plaintiff above set forth, informed one Ike Hawkins, a deputy sheriff of Kingfisher county, Okla., who was on said train returning to Kingfisher in charge of a prisoner, that said plaintiff had committed the crime of forgery, and maliciously, wrongfully, and unlawfully commanded and requested the said deputy sheriff to arrest the plaintiff for forgery, and to take him to Kingfisher and lock him up; that said deputy sheriff, acting for and under the instructions of the defendant, without the consent of the plaintiff, and without any cause or excuse, arrested the plaintiff, handcuffed him, restrained him of his liberty, and confined him in the seat with another prisoner that the (the said deputy) had in charge at said time; that, because of such wrongful and malicious conduct of the defendant, the plaintiff was, without his consent, kept under arrest by said deputy sheriff, and was by said deputy sheriff wrongfully and unlawfully handcuffed, confined, restrained, deprived of his liberty, and compelled to ride in a seat with said other prisoner from the village of Hennessey to Kingfisher; that, just before the train reached the station of defendant, at the said city of Kingfisher, the said defendant, through its said auditor, caused said deputy sheriff to release the plaintiff from restraint and imprisonment, and to unhandcuff him and give him his liberty." It was fur-

ther charged that the plaintiff had not committed or attempted to commit the crime of forgery or any other crime on said train, or at any other time or place, and that his arrest and imprisonment was maliciously, wrongfully, and unlawfully caused by the defendant without excuse, and that thereby he was greatly injured and hurt, deprived of his liberty, injured in his health, caused great mental pain and suffering, and subjected to great ridicule, contempt, shame, humiliation, indignity, and disgrace. That the plaintiff was arrested by the deputy sheriff, and while in charge of the officer was taken from his seat to another seat in the rear of the coach and there kept for a time, handcuffed to another prisoner, was not denied. There was a conflict in the testimony as to the immediate cause of the arrest. Some of the witnesses testified that plaintiff was arrested by the officer, under the direction of the train auditor, on the charge of forgery; others testified that his arrest was on account of his having committed, or being about to commit, an assault on the auditor; while there was still other testimony tending to show that the arrest was caused on account of plaintiff's refusal to pay his fare. No formal charge for any offense was ever preferred against plaintiff; and, after he had complied with the auditor's demand and paid his fare, he was discharged from further custody.

It is urged by the plaintiff in error that it is not responsible for the wrongs committed by its auditor; and counsel cite in support of their position the case of *Lake Shore & Michigan Southern Railway Co. v. Prentice,* 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97. The rule announced in the Lake Shore case was followed by this court in *Atchison, T. & S. F. Ry. Co. v. Chamberlain,* 4 Okla. 542, 46 Pac. 499; *Moore v. Atchison, T. & S. F. Ry. Co.,* 26 Okla. 682, 110 Pac. 1059; and *Chicago, R. I. & P. Ry. Co. v. Newburn,* 27 Okla. 9, 110 Pac. 1065, 30 L. R. A. (N. S.) 432. The Chamberlain case, as well as the Moore case, arose in Oklahoma Territory prior to statehood, while the Newburn case was begun in the courts of the Indian Territory in January, 1907. Therefore the rule announced in the Lake Shore

case was controlling upon the courts in both territories, and upon this court. Section 1, Schedule, Williams' Ann. Const. Okla., sec. 365.

The facts charged in the Lake Shore case were similar, in many of their material aspects, to the case at bar. There the plaintiff, his wife, and a number of persons were passengers holding excursion tickets on a regular passenger train of the defendant railroad from Norwalk, Ohio, to Chicago, Ill. While en route, the plaintiff purchased of several passengers their return tickets, which had nothing on them to show that they were not transferable. The conductor of the train learning this, and knowing that plaintiff had been guilty of no offense for which he was liable to arrest, telegraphed for a police officer employed by the defendant, who boarded the train as it approached Chicago. The conductor thereupon, in a loud and angry voice, pointed out the plaintiff to the officer, and ordered his arrest; and the officer, by direction of the conductor, and without any warrant or authority of law, seized the plaintiff and rudely searched him for weapons in the presence of other passengers, hurried him into another car, and there sat down by him as a watch, and refused to tell him the cause of his arrest or to let him speak to his wife. While the plaintiff was being removed into the other car, the conductor, for the purpose of disgracing and humiliating plaintiff with his fellow passangers, openly declared that he was under arrest, and sneeringly said to the plaintiff's wife, "Where is your doctor now?" On arrival at Chicago, the conductor refused to let the plaintiff assist his wife with her parcels in leaving the train, or to give her the check for their trunk; and in the presence of passengers and others ordered him to be taken to the station house, to which he was subsequently taken and detained until the conductor arrived, when a false charge of disorderly conduct was preferred against him. Plaintiff gave bond and was released; and on appearing before the justice of the peace for trial on the day following, and no one appearing to prosecute him, he was finally discharged. A verdict of $10,000 was returned by the jury, and the plaintiff, by leave of court, remitted the sum of $4,000, and judgment was rendered for

$6,000. Referring to the liability of the company for damages, it was said by the court:

"The rule has the same application to corporations as to individuals. This court has often, in cases of this class, as well as in other cases, affirmed the doctrine that for acts done by the agents of a corporation, in the course of its business and of their employment, the corporation is responsible, in the same manner and to the same extent as an individual is responsible under similar circumstances. *Philadelphia, W. & B. R. Co. v. Quigley,* 62 U. S. (21 How.) 202, 210, 16 L. Ed. 73, 75; *First Nat. Bank of Carlisle v. Graham,* 100 U. S. 699, 702, 25 L. Ed. 750, 751; *Salt Lake City v. Hollister,* 118 U. S. 256, 261 [6 Sup. Ct. 1055] 30 L. Ed. 176, 177; *Denver & R. G. R. Co. v. Harris,* 122 U. S. 597, 608 [7 Sup. Ct. 1286] 30 L. Ed. 1146, 1148. A corporation is doubtless liable, like an individual, to make compensation for any tort committed by an agent in the course of his employment, although the act is done wantonly and recklessly, or against the express orders of the principal. *Philadelphia & R. Co. v. Derby,* 14 How. (55 U. S.) 468, 14 L. Ed. 502; *New Jersey S. B. Co. v. Brockett,* 121 U. S. 637 [7 Sup. Ct. 1039] 30 L. Ed. 1049; *Howe v. Newmarch,* 12 Allen [Mass.] 49; *Ramsden v. Boston & A. R. Co.,* 104 Mass. 117 [6 Am. Rep. 200]. A corporation may even be held liable for a libel, or a malicious prosecution, by its agent within the scope of his employment; and the malice necessary to support either action, if proved in the agent, may be imputed to the corporation. *Philadelphia, W. & B. R. Co. v. Quigley,* 21 How. (62 U. S.) 202, 211, 16 L. Ed. 73, 75; *Salt Lake City v. Hollister,* 118 U. S. 256, 262 [6 Sup. Ct. 1055] 30 L. Ed. 176, 178; *Reed v. Home Savings Bank,* 130 Mass. 443, 445 [39 Am. Rep. 468], and cases cited; *Krulevitz v. Eastern R. Co.,* 140 Mass. 573 [5 N. E. 500]; *McDermott v. Evening Journal Ass'n,* 43 N. J. Law, 488 [39 Am. Rep. 606]; *Id.,* 44 N. J. Law, 430 [43 Am. Rep. 392]; *Bank of New South Wales v. Owston,* L. R. 4 App. Cas. 270. But, as well observed by Mr. Justice Field, now Chief Justice of Massachusetts: 'The logical difficulty of imputing the actual malice or fraud of an agent to his principal is perhaps less when the principal is a person than when it is a corporation; still the foundation of the imputation is not that it is inferred that the principal actually participated in the malice or fraud, but, the act having been done for his benefit by his agent acting within the scope of his employment in his business, it is just that he should be held responsible for

it in damages. *Lothop v. Adams,* 133 Mass. 471, 480, 481 [43 Am. Rep. 528].' "

The judgment of the lower court, however, was reversed for the reason that it was not contended, nor was there any evidence introduced tending to show, that the conductor was known to the railroad company to be an unsuitable person in any respect, or that the defendant in any way participated in, approved, or ratified his treatment of the plaintiff, and therefore plaintiff could not recover punitive damages, however, as to such damages as were compensatory, the case is one that strongly supports the contention of the defendant in error here, and announces the very general rule that a corporation, like an individual, is liable to make compensation for any tort committed by its agent in the course of his employment, even though the act is done wantonly and recklessly, or was against the express orders of the company. Upon the question, however, of exemplary damages, the authorities are conflicting, as was observed by the court in the course of the opinion in the above case.

In the Chamberlain case our own court approved an instruction authorizing the recovery of compensatory damages in the language following:

"You are further instructed that, if you find for the plaintiff, it is your privilege to find any sum which, in your judgment, will compensate the plaintiff for injuries sustained, not exceeding the amount claimed. * * *"

It was held that there was no testimony to authorize a verdict for exemplary damages, and that the instruction submitting to the jury that issue was erroneous.

It is provided by statute (section 1394, Comp. Laws 1909) that, if any passenger shall refuse to pay his fare, it shall be lawful for the conductor of the train and the servants of the corporation to put him and his baggage out of the cars; but that his eviction must be done with as little violence as possible, and at any usual stopping place or near some dwelling house. *Moore v. Atchison, T. & S. F. Ry. Co.,* 26 Okla. 682, 110 Pac. 1059; *St. Louis & S. F. R. Co. v. Johnson,* 25 Okla. 833, 108 Pac.

378. But this right to evict for refusal to pay fare confers upon the conductor or employees no authority to procure the arrest of the passenger thus refusing.

There is a sharp conflict in the testimony as to the reason for plaintiff's arrest; some of the witnesses testifying that it was done at the instance of the auditor, who had charged plaintiff with forgery and publicly proclaimed that he would get two years in the penitentiary; by others, that the arrest was made on account of plaintiff's attempt to commit an assault, in the officer's presence, on the auditor; while the officer at one time testified that he was asked by the auditor to arrest the plaintiff for failure to pay his fare, providing he did not pay it before the train reached Kingfisher, and this testimony is supported, not only by the evidence of the plaintiff, but of the defendant's witness Boling. The question was one for the jury, and was resolved in favor of plaintiff.

The refusal to pay cash fare is not an offense against the law that alone will subject one to arrest or imprisonment. The jury were properly instructed that, if the plaintiff attempted or made an assault upon the auditor, the arrest was lawful; and that, in such event, their verdict should be for the defendant. The court further submitted to the jury the issue of plaintiff's honest intent and good faith in proffering the ticket for his transportation, and also instructed that, if plaintiff knew that the ticket contained a provision making it nontransferable, and signed thereon the name of the original holder to secure a gain and benefit therefrom, then such act would be criminal. From this it must have followed, had the jury so found, that the arrest was lawful; and, if lawful, no liability could attach. Upon these conflicting issues, covered by proper instructions, the verdict of the jury is conclusive of the fact that the arrest was unlawful.

As to the defendant company's liability, we believe the rule, supported by the great weight of authority and the best reasoning, to be that the master is liable for the acts done by a servant within the scope of his general authority, in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. *Birmingham Ry., etc.,*

*Co. v. Baird,* 130 Ala. 334, 30 South. 456, 54 L. R. A. 752, 89 Am. St. Rep. 43; *Brennan v. Fair Haven & Westville Ry. Co.,* 45 Conn. 284, 29 Am. Rep. 679; *Western & Atlantic Ry. Co. v. Turner,* 72 Ga. 292, 53 Am. Rep. 842; *McKinley v. Chicago, etc., Ry. Co.,* 44 Iowa, 314, 24 Am. Rep. 748; *Birmingham Waterworks Co. v. Hubbard,* 85 Ala. 179, 4 South. 607, 7 Am. St. Rep. 35; *Lake Shore Ry. Co. v. Brown,* 123 Ill. 162, 14 N. E. 197, 5 Am. St. Rep. 510; *Evansville, etc., Ry. v. McKee,* 99 Ind. 519, 50 Am. Rep. 102; *Evansville, etc., Ry. Co. v. Baum,* 26 Ind. 70; *Atchison, T. & S. F. Ry. Co. v. Henry,* 55 Kan. 715, 41 Pac. 952, 29 L. R. A. 465; *Wheeler & Wilson Mfg. Co. v. Boyce,* 36 Kan. 350, 13 Pac. 609, 59 Am. Rep. 571; *Southern Kansas Ry. Co. v. Rice,* 38 Kan. 398, 16 Pac. 817, 5 Am. St. Rep. 766; *Williams v. Pullman Palace Car Co.,* 40 La. Ann. 87, 3 South. 631, 8 Am. St. Rep. 512; *Lafitte v. New Orleans City & Lake R. Co.,* 43 La. Ann. 34, 8 South. 701, 12 L. R. A. 337; *Kansas City, etc., Ry. Co. v. Kelley,* 36 Kan. 655, 14 Pac. 172, 59 Am. Rep. 596; *Goddard v. Grand Trunk Ry. Co.,* 57 Me. 202, 2 Am. Rep. 39; *Hanson v. European & N. A. Ry. Co.,* 62 Me. 84, 16 Am. Rep. 404; *Sherley v. Billings,* 8 Bush (Ky.) 147, 8 Am. Rep. 451; *New York, P. & N. R. Co. v. Waldron,* 116 Md. 441, 82 Atl. 709, 39 L. R. A. (N. S.) 502; *Philadelphia, etc., R. Co. v. Larkin,* 47 Md. 155, 28 Am. Rep. 442; *Howe v. Newmarch,* 12 Allen (Mass.) 49; *Bryant v. Rich,* 106 Mass. 180, 8 Am. Rep. 311; *Ramsden v. Boston & Albany R. Co.,* 104 Mass. 117, 6 Am. Rep. 200; *Wilton v. Middlesex R. Co.,* 107 Mass. 108, 9 Am. Rep. 11; *Hull v. Boston & Maine Ry. Co.,* 210 Mass. 159, 96 N. E. 58, 36 L. R. A. (N. S.) 406, Ann. Cas. 1912C, 1147; *Morier v. St. Paul, etc., Ry. Co.,* 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793; *Ephland v. Missouri Pacific Ry. Co.,* 137 Mo. 187, 37 S. W. 820, 38 S. W. 926, 35 L. R. A. 107, 59 Am. St. Rep. 498; *Brown v. Hannibal, etc., Ry. Co.,* 66 Mo. 588; *Garretzen v. Duenckel,* 50 Mo. 104, 11 Am. Rep. 405; *Eckert v. St. Louis Transfer Co.,* 2 Mo. App. 36; *Richberger v. American Express Co.,* 73 Miss. 161, 18 South. 922, 31 L. R. A. 390, 55 Am. St. Rep. 522; *New Orleans, etc., Ry. Co. v. Allbritton,* 38 Miss. 242, 75 Am. Dec. 98; *Haver v.*

Central R. Co., 62 N. J. Law, 282, 41 Atl. 916, 43 L. R. A. 84, 72 Am. St. Rep. 647; *Palmeri v. Manhattan El. Ry. Co.,* 133 N. Y. 261, 30 N. E. 1001, 16 L. R. A. 136, 28 Am. St. Rep. 632; *Mott v. Consumers' Ice Co.,* 73 N. Y. 543; *Cosgrove v. Ogden,* 49 N. Y. 255, 10 Am. Rep. 361; *Molloy v. New York, etc., Ry. Co.,* 10 Daly (N. Y.) 453; *Rounds v. Delaware, etc., Ry. Co.,* 64 N. Y. 129, 21 Am. Rep. 597; *Mulligan v. New York & H. R. Ry. Co.,* 129 N. Y. 506, 29 N. E. 952, 14 L. R. A. 791, 26 Am. St. Rep. 539; *Penney v. New York Central & H. R. Co.,* 34 App. Div. 10, 53 N. Y. Supp. 1043; *Jackson v. American Tel. & Tel. Co.,* 139 N. C. 347, 51 S. E. 1015, 70 L. R. A. 738; *Harriman v. Pittsburg, etc., Ry. Co.,* 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. Rep. 507; *Passenger R. Co. v. Young,* 21 Ohio St. 518, 8 Am. Rep. 78; *Duggan v. Baltimore & O. R. Co.,* 159 Pa. 248, 28 Atl. 182, 186, 39 Am. St. Rep. 672; *International & G. N. Ry. Co. v. Anderson,* 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; *Kansas City, M. & O. Ry. Co. v. Walsh* (Tex. Civ. App.) 148 S. W. 347; *Burnett v. Oochsner,* 92 Tex. 588, 50 S. W. 562, 71 Am. St. Rep. 880; *Nashville, etc., Ry. Co. v. Starnes,* 9 Heisk. (Tenn.) 52, 24 Am. Rep. 296; *Gillingham v. Ohio River Ry. Co.,* 35 W. Va. 588, 14 S. E. 243, 14 L. R. A. 799, 29 Am. St. Rep. 827; *Fick v. Chicago, etc., Ry. Co.,* 68 Wis. 469, 32 N. W. 527, 60 Am. Rep. 878; *Craker v. Chicago, etc., Ry. Co.,* 36 Wis. 657, 17 Am. Rep. 504.

That the plaintiff's arrest was procured by the auditor, in furtherance of the company's business, is abundantly shown by the testimony. It occurred contemporaneously with the auditor's effort to enforce collection of a cash fare. The entire transaction occurred within a very short space of time, and was one continuous and unbroken occurrence. Publicly charging plaintiff, in the presence of a number of passengers, with being a forger, and threatening to have him imprisoned, and procuring the officer to make the arrest, were all acts done in connection with the effort to secure payment of the fare. In fact, it was the very act of signing the ticket tendered as fare that first brought down upon plaintiff the auditor's wrath. Certainly we cannot say that such an act is so disassociated from, or independent of, the

auditor's duty as to absolve the defendant company from lia-
bility. It is a matter of common knowledge that train auditors,
when employed, are intrusted with the duty of the collection
of fares, and it was in the discharge of this particular employ-
ment that the auditor was engaged when the trouble arose.
*Richberger v. American Express Co., supra; Moore v. Louisiana
& Ark. Ry. Co.,* 99 Ark. 233, 137 S. W. 826, 34 L. R. A. (N.
S.) 299; *Goodloe v. Memphis & Charleston R. Co.,* 107 Ala.
237, 18 South. 166, 29 L. R. A. 729, 54 Am. St. Rep. 67; *West
Chicago Street Ry. Co. v. Luleich,* 85 Ill. App. 643. Whether
a particular act of a certain servant was or was not in the line
of his duty is a question of fact to be determined by the jury
from surrounding facts and circumstances. *St. Louis, I. M. &
S. Ry. Co. v. Hendricks,* 48 Ark. 177, 2 S. W. 783, 3 Am. St.
Rep. 220; *Dwinelle v. New York Central & H. R. Co.,* 120 N.
Y. 117, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611.

In *Chicago, R. I. & P. Ry. Co. v. Holliday,* 30 Okla. 680,
120 Pac. 927, 39 L. R. A. (N. S.) 205, we held that a private
corporation, like an individual, is liable for the acts of its agent
in instituting a malicious prosecution, if the same was done
while acting within the scope of his authority. It was there ob-
served that there was a marked distinction between an act done
for the purpose of protecting the property of the company by
preventing a felony or recovering it back, and an act done for
the purpose of punishing an offender for that which he had al-
ready done.

A similar question was before the Court of Appeals of New
York (*Lynch v. Metropolitan El. Ry. Co.,* 90 N. Y. 77, 43 Am.
Rep. 141), where it was said by Earle, J., referring to the right
of the railroad company to make reasonable rules and regula-
tions for the management of its business and the conduct of its
passengers:

"The defendant had such a regulation, and no complaint can
be made of that. But it had no regulation, and could legally
have none, that a passenger, before leaving its cars or premises,
should produce a ticket or pay his fare, and, if he did not, that
he should then and there be detained and imprisoned until he
did so. At most, the plaintiff was a debtor to the defendant for

the amount of his fare, and that debt could be enforced against him by the same remedies which any creditor has against his debtor. If the defendant had the right to detain him to enforce payment of the fare for ten minutes, it could detain him for one hour, or a day, or a year, or for any other time, until compliance with its demand. That would be arbitrary imprisonment by a creditor without process or trial, to continue during his will, until his debt should be paid. Even if a reasonable detention may be justified to enable the carrier to inquire into the circumstances, it cannot be to compel payment of fare. The detention here was not to enable the gatekeeper to make any inquiry, but simply to compel payment. He was absolutely informed that he could not pass out without producing a ticket or paying his fare. This is not like the cases to which the learned counsel for defendant has called our attention, where railroad conductors have been held justified in ejecting passengers from cars for refusing to produce tickets or pay their fares. A passenger has no right to ride in a car without payment of his fare; and, if he refuses to pay, the railroad company is not bound to carry him, and may at a proper place, and in a proper manner, remove him from the car; but it could not imprison him in a car until he paid his fare, for the purpose of compelling payment. These views have the sanction of very high authority. In *Sunbolt v. Alford*, 3 M. & W. 248, it was held that an innkeeper could not detain the person of his guest in order to secure the payment of his bill. Lord Abinger said: 'If an innkeeper has a right to detain the person of his guest for the nonpayment of his bill, he has a right to detain him until the bill is paid, which may be for life; so that this defense supposes that, by the common law, a man who owes a small debt for which he could not be imprisoned by legal process may yet be detained by an innkeeper for life. The proposition is monstrous. * * * Where is the law that says a man shall detain another for his debt without process of law?' In *Chilton v. London, etc., R. Co.*, 16 M. & W. 212, the defendant was organized under an act conferring much broader powers than are possessed by the defendant in this case; and yet it was held that it could not arrest a passenger for refusing to pay his fare which it was entitled to demand."

That no one may be deprived of his liberty without due process of law, and that imprisonment for debt shall never be undertaken in such cases, will not be controverted. But it was ef-

fectively resorted to in the case at bar; and for this invasion of plaintiff's rights, defendant company must respond in damages.

In *Kansas City, M. & O. Ry. Co. v. Walsh, supra,* decided during the present year, it appeared that the plaintiff's son, a boy of ten years of age, entered defendant's passenger train without any money or ticket, and the conductor ordered the brakeman to lock him in the water-closet, where he was held until the train passed the station at which the boy lived, when he was taken out of the closet and put off without any harsh words or physical injury. The conductor intentionally carried him past the station to break up a habit which the boys had of stealing rides between the boy's home station and another station. It was held that the conductor's act was a continuous one, in doing which he acted in furtherance of the railroad company's business, and within the scope of his authority so as to make the company liable.

In *Krulevitz v. Eastern R. Co.,* 143 Mass. 228, 9 N. E. 613, opinion by Holmes, J., the passenger on a railroad train had refused to pay his fare. On arrival of the train at the place where the passenger intended to leave it, and before he left, he was arrested at the request of the conductor, who was a railroad police officer, by a local police officer without a warrant. It was held that the arrest was not necessarily, as a matter of law, an arrest by the conductor as a railroad police officer, and further that, if the conductor, in making the request for the arrest, acted merely as conductor and within the scope of his authority, the arrest was not authorized by the statute, and constituted an assault and false imprisonment, for which the passenger could maintain an action against the company. Many authorities on the liability of a railroad company for the willful acts of its employees are collected in section 1265, Elliott on Railroads (2d Ed.).

We do not think that the court erred in refusing to give the defendant's requested instruction No. 9, and in giving instruction No. 8. Plaintiff was entitled to recover for both physical and mental suffering, or for either, endured by him, and for any shame, disgrace, or humiliation to which he had wrongfully been subjected. We know of no case, and counsel has not attempted

to cite any, where, in an action to recover damages for false arrest, it was held necessary to prove, in addition to mental suffering, a physical injury, before a recovery would be authorized. The decisions of this court in *Butner v. Western Union Tel. Co.*, 2 Okla. 234, 37 Pac. 1087; *Long v. Chicago, R. I. & P. Ry. Co.*, 15 Okla. 512, 86 Pac. 289, 6 L. R. A. (N. S.) 883, 6 Ann. Cas. 1005; *Western Union Tel. Co. v. Foy*, 32 Okla. 801, 124 Pac. 305; *Western Union Tel. Co. v. Reeves*, 34 Okla. 468, 126 Pac. 216—announce no such rule. The injury done by being illegally restrained of one's liberty is akin to that suffered from assault and battery; the injured party in such cases, even though the act complained of be done without malice, is entitled to recover for the suffering, both bodily and mental, which the wrong may have occasioned; and, if the defendant has acted wantonly, oppressively, or maliciously in causing the arrest, he may, in the discretion of the jury, be liable for exemplary damages, but not otherwise. Sutherland on Damages, secs. 1257, 1258.

In *Chicago, R. I. & P. Ry. Co. v. Holliday, supra*, it was said:

"The damages assessed doubtless exceed the injury done to the goods; but the jury, as it had the right to do, assessed the damages with reference to the feeling of plaintiff and the disturbance of his family."

See, also, Sutherland on Damages, secs. 942, 943; Elliott on Railroads, sec. 1816.

No instruction was asked by defendant upon the question of probable cause for the arrest; hence, even though such an instruction had been proper, which we do not undertake to decide, the court's failure to submit such an instruction of its own motion is not ground for reversal. If proper, a requested instruction covering the law desired to be submitted should have been prepared and presented to the court by counsel, with its other instructions. *Huff v. Territory of Oklahoma*, 15 Okla. 376, 85 Pac. 241; *Chicago, R. I. & P. Ry. Co. v. Baroni*, 32 Okla. 540, 122 Pac. 926; *First Nat. Bank of Muskogee v. Tevis*, 29 Okla. 714, 119 Pac. 218.

In conclusion, it is urged that the verdict of the jury for

$625 is excessive.  To grant new trials on the ground of excessive damages is a function that appellate courts will sparingly exercise, and only when it appears that the verdict is so excessive as *per se* to indicate passion or prejudice, as was held in *Choctaw, O. & G. Ry. Co. v. Burgess et al.,* 21 Okla. 653, 97 Pac. 271.  This we cannot say in the case under consideration.

Finding no error warranting a reversal of the case, the judgment of the trial court should be affirmed.

By the Court:  It is so ordered.