## WALTON v. CHESEBOROUGH.

(Supreme Court, Appellate Division, First Department. April 7, 1899.)

1. BROKERS—COMMISSION—CASE FOR JURY.

Plaintiff having by his testimony made out a case for agreed commissions for exchange of real estate, the case should be left to the jury, though plaintiff was not a broker, and admitted he did nothing but introduce the parties, further services being waived, and was contradicted in many essentials by defendant.

2. SAME—INSTRUCTIONS.

An instruction that, "to entitle a real-estate broker to compensation, it is sufficient that a sale is effected through his agency as its procuring cause," is not erroneous, because not coupling therewith the element that a broker must prove his employment, and other elements previously stated in the charge, and having a bearing on the case as a whole.

3. EVIDENCE—CONVERSATIONS.

Conversations between defendant and another in plaintiff's absence are not admissible against the latter.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Francis T. Walton against Robert A. Cheseborough. From a judgment on verdict for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

George H. Adams, for appellant.

Maurice Rapp, for respondent.

O'BRIEN, J. The action was brought to recover $1,200 as broker's commissions, due, as alleged, for services rendered in effecting an exchange of property. The property owned by the defendant consisted of certain lots on Central Park West, between 107th and 108th streets, and was exchanged for the St. Lawrence Apartment House owned by Patrick McMorrow on 88th street and Madison avenue. The complaint alleges that the plaintiff was employed by the defend-

ant to negotiate and effect a sale or exchange, and that he was to
receive a commission of 1 per cent. for his services, that the transfer
was negotiated by the plaintiff, and that no commission has been paid.
The answer denies that the plaintiff was employed, or that he nego-
tiated or effected the exchange, and further sets up that the plaintiff
was employed to act as broker by Patrick McMorrow, the other party
to the exchange. The plaintiff, by reply, claims that he was em-
ployed by both parties, with their knowledge and consent. There
are some exceptions to rulings on evidence, and one to the charge of
the court contained in a request made by the plaintiff, to which refer-
ence will be made hereafter; but the real question presented on this
appeal is raised by the motion to dismiss the complaint, and requires,
a consideration of the evidence for the purpose of determining whether
the plaintiff made out a prima facie case entitling him to go to the
jury.

On the trial, the plaintiff stated that he was not a real-estate broker,
but was an hotel man, and that in an interview the defendant sug-
gested building an hotel for him on certain lots which he owned on
Central Park West; that, finding the property unsuitable for that
purpose after having seen it, he asked the defendant at that inter-
view what the price of the lots would be, and the defendant told him
$160,000; that this occurred about the time that he was looking for
an apartment, and, having visited the St. Lawrence Apartment House,
he went to the office of Mr. McMorrow, the proprietor, whom he found
that he had previously known, and, in the course of the conversation
between them, the question as to whether McMorrow would be willing
to sell or exchange the St. Lawrence was broached; that he asked
McMorrow whether he knew the defendant, to which he replied in
the negative, and he then asked if he would pay him a commission,
provided he could make a deal in reference to the property, to which
McMorrow assented, in addition agreeing that he would not object if
he got a commission from the other side also; that he asked for and
obtained from McMorrow his card, and told him he was going to give
it to the defendant; that at the same interview he submitted to Mc-
Morrow a list of the property belonging to the defendant, including
the lots which were afterwards exchanged, and that McMorrow said
he would go and see Cheseborough; that on the next day he went to
the defendant's office, and spoke to him on the subject of a trade, and,
although the defendant sought to ascertain the person he had in
view, that he did not give up the name till the defendant had stated
that he would, if a trade was made, allow him a commission, and
further said that he had no objection to his receiving a commission
from both sides; that, after these preliminaries were settled, he told
the defendant about McMorrow and his property, and that at first the
defendant was reluctant to entertain the proposition, for the reason
that the property was not satisfactory, but, on being urged, he prom-
ised to go and see it; that at the next interview the defendant told
him that he had seen the property, and thought better of the idea
of an exchange. The plaintiff's testimony at this point is of sufficient
importance, as bearing on the question of liability, to justify stating
it in full, as follows:

"Q. After this first interview, you saw Mr. Cheseborough again, and what was said at that time, at the second interview? A. He said he thought better of the property. Mr. Cheseborough said to me, 'I will attend to any negotiations that will be made myself.' This was at the second interview, and intimated at the first. * * * Q. I want to know exactly what was said at this second interview. * * * A. I said, 'Mr. Cheseborough, did you examine that property?' He said, 'Yes; and when I want to see you I will let you know. I will do my own negotiating now.' He didn't let me know. I called at his office several times to see him, and one day I met him in front of the Equitable Building, and he tried to get ·by me, and I stopped him, * * * and I said, 'I see you have made that trade; I want my commission.' He said, 'What will you take for your claim?' I said, 'I will take all I am entitled to, nothing less,—one per cent.' He offered me $500."

It was conceded that the exchange took place, and that the value of the lots owned by Mr. Cheseborough was, for the purposes of this trial, $120,000. It will be seen that, at the close of his testimony, the plaintiff had made out a prima facie case, and the motion to dismiss the complaint was properly denied.

The defendant was then called as a witness, and testified that he told the plaintiff of his desire to sell, and said to him that he would pay 1 per cent., provided he sold the lots for him, but that he would not trade; that the plaintiff mentioned some apartment buildings, including that at 88th street and Madison avenue; and that that was all that he had to do with the plaintiff till the demand was made for the payment of the commission, when he said he was willing to pay him a few hundred dollars, but not $500. McMorrow testified for the defendant that the plaintiff came to the St. Lawrence Apartment House, and that he had a conversation with him relating to a sale of the apartment house for $360,000, and mentioned that, if he succeeded in making a sale, he might expect to receive 1 per cent. as the usual commission; that he was willing to make the exchange suggested by the plaintiff, if satisfactory terms could be arranged; that thereafter he did not see the plaintiff; but that an exchange took place between Cheseborough and himself. In submitting ·the question to the jury, the learned trial judge in his charge gave a clear statement of the elements necessary for the plaintiff to establish, in order to entitle him to a brokerage or commission, in the following language:

"The plaintiff must show to your satisfaction, * * * in the first place, that he was employed by the defendant to effect the transaction,—the disposal' of the lots upon Central Park West; and, in the second place, * * * that he was the moving cause which led up to and produced the exchange that afterwards was made. * * * Now, certainly a man cannot act as broker in a transaction of this kind for both sides. * * * But, being somewhat unusual, * * * it is necessary for the plaintiff to clearly establish to your satisfaction, before he can recover, * * * that at the time Cheseborough promised to pay him the commission, if he did promise to pay him the commission, 'he distinctly understood that he had already been employed by McMorrow as a broker, and that McMorrow had already agreed to pay him a commission. And he must further make it clearly appear to your satisfaction that Cheseborough, knowing that fact, then employed him as a broker upon his side of the transaction, and agreed to pay him a commission. * * * Now, in order to earn a commission, a broker who has been employed must do something. He must be the promoting cause which brings about the transaction which afterwards results in a sale or an exchange. * * * It does not even appear from the plaintiff's testimony that, after he had obtained a

promise of a commission from * * * Cheseborough, he ever did anything at all to bring about the transaction which ultimately was completed between the parties. * * * The plaintiff himself says that he took no further part, so far as Cheseborough was concerned; but he gave as a reason for that— which, if it be a true reason, is a sufficient one—that, after Mr. Cheseborough had agreed to pay him one per cent. commission, if he effected this exchange, he then told him not to do anything more about it; that if he wanted him he would send for him, but that he would conduct the negotiations himself."

The trial judge, at some length, explained the bearing of this rule upon the right of a broker to recover, and then assented to a request made by the plaintiff to charge in the following language, to which exception was taken:

"Plaintiff's counsel: I ask your honor to charge, to entitle a real-estate broker to compensation, it is sufficient that a sale is effected through his agency as its procuring cause. The Court: Yes, I so charge. Plaintiff's counsel: And if his communications with the purchaser are the means of bringing him and the owner together, and the sale results in consequence, the compensation is earned, although the broker does not negotiate, and is not present at the sale. The Court: That I charge."

The defendant's counsel then asked the court to charge the jury the following proposition, which was done:

"Although you find that the defendant employed the plaintiff, and offered to give him a commission as broker to sell his property, this is not enough to justify you to find an employment to exchange, and, if it appears that there was no sale, but an exchange, the plaintiff is not entitled to recover upon the original employment to sell."

The exception taken to the requests made by the plaintiff was, as far as they applied to particular facts, correct as an abstract proposition of law; but, taken in connection with the facts here and with the final request made by the defendant, together with the whole charge of the court, it becomes evident that the requests were not open to objection. It is true that there was not included therein the element that a broker must first prove his employment; and, as applicable to all cases, some other element may be lacking; but, as bearing upon the facts of this case, and in view of the previous charge of the court, it was not erroneous, unless we are prepared to hold that a proposition of law which is good as applying to certain facts of the case is bad because the court, having once stated all the necessary elements, does not again couple or join to the request every other element that has a bearing upon the case as a whole. Nor were the exceptions to rulings upon evidence well taken. One of the questions called for a statement of a conversation between the defendant and Mc-Morrow when plaintiff was absent, and the other called upon the witness to state a conclusion as to a conversation had in the absence of the plaintiff. The exceptions being untenable, we are brought back to the question which we discussed at the outset, as to whether upon the whole case there was sufficient evidence to present the question of defendant's liability to the jury. We do not understand the appellant seriously to contend that, if the plaintiff's testimony is credible, it would not justify a recovery. It is contended only that the story in itself is very improbable,—stress being laid on the fact that plaintiff was not a real-estate broker,

and, by his own admissions, did nothing beyond introducing the subject of an exchange to the parties,—and that in view of the fact that his testimony of employment stands alone, and is met by absolute denials on the part of defendant of many essential elements, which, if wanting, would prevent a recovery, it was the duty of the trial judge to take the case from the jury, and dismiss the complaint. The well-settled rule, however, requires that, where there is a conflict of evidence, such conflict shall be settled by the jury, and not by the court. Questions of fact and the credibility of witnesses are peculiarly within the province of a jury. Though the plaintiff is contradicted by the defendant and his witness McMorrow in some particulars, there are certain other particulars upon which all are agreed; for instance, that the first knowledge McMorrow had of the defendant was through the plaintiff. And the defendant himself, although he denied that he had heard through the plaintiff of McMorrow's name as the owner of the St. Lawrence, testified that, upon the first occasion when he met McMorrow, Walton's name was mentioned, and said:

"It may be that I said that I had come there at the suggestion of Mr. Walton, I am not sure. Mr. McMorrow thinks that I did, and it is possible that I did."

It is not, however, for us to determine which of the conflicting and irreconcilable versions given, respectively, by the plaintiff and the defendant, is the true one; that determination, as already said, being within the province of the jury. And they, having reached a conclusion thereon, after a charge by the learned trial judge which is unexceptionable, it becomes our duty, regardless of our own view as to the credibility of the witnesses, to sustain their verdict. We think the judgment accordingly must be affirmed, with costs.

BARRETT and RUMSEY, JJ., concur. VAN BRUNT, P. J., and INGRAHAM, J., dissent.