McMILLIN et al. v. BEVES.

(Circuit Court of Appeals, Second Circuit. May 22, 1906.)

No. 114.

BROKERS—SALE OF BONDS—RIGHT TO COMMISSION.

It is sufficient to entitle a broker to his commission on a sale of bonds that the sale was effected through his agency as its procuring cause, and when his communications with the purchaser were the means of bringing the purchaser and his principal together, and a sale results as a consequence thereof, his right to his commission is not defeated because the principal assumes exclusive charge of the subsequent negotiations, dispensing with his services, nor because the sale is finally made on substituted terms resulting from such final negotiations.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Brokers, § 74.]

In Error to the Circuit Court of the United States for the Southern District of New York.

A. J. Rose, for plaintiffs in error.

Dallas Flannagan, for defendant.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The action was brought to recover commissions alleged to have been earned by the plaintiff as a broker in procuring the sale of certain corporate bonds. The principal assignments of error are based upon the refusal of the trial judge to direct a verdict for the defendants.

The jury were authorized to find the following facts: Early in January, 1901, the defendants requested plaintiff to find a purchaser for $215,000 mortgage bonds of a traction company operating certain street railroads in Oshkosh, Wis., and to offer them at a specified price with a certain amount of the stock of the company as a bonus, and promised the plaintiff a commission upon the sale of 2½ per cent. Pursuant to that proposition the plaintiff entered into communications with one Donnell, of Boston, and at the suggestion of Donnell had several interviews with the defendants to obtain information relative to the value of the securities, and reported the results to Donnell. February 19th plaintiff brought Donnell to the office of the defendants in New York City, introduced him, and told them he had offered the bonds to Donnell on the terms which they had suggested, and the defendants promised him that his commission should be taken care of. At that interview, after having a private conference with Donnell, the defendants told the plaintiff in substance that they had offered the bonds to Donnell at a somewhat reduced price, naming the terms; and an understanding was reached between all the parties that Donnell would within a few weeks investigate the value of the securities and negotiate directly with the defendants, and that the plaintiff's further intervention would be unnecessary unless he should be called in by the defendants. Thereafter Donnell visited Oshkosh, had the railroad properties examined by an expert, investigated the earnings and expenses and general financial condition of the company, had numerous interviews at Boston and at Chicago with Farley, an employé of the defendants in charge of their Boston office, and finally agreed definitely with Farley to purchase the bonds. Subsequently Donnell closed the transaction with the defendants, entering into a written agreement with them which modified somewhat his agreement with Farley, and which contained independent provisions contingent upon a reorganization of the traction company by Donnell. The terms of this agreement, so far as it related to the purchase of the bonds, were practically those originally proposed to him by the defendants. By the original proposition he was to have the bonds and the bonus stock for a sum which, with interest, would have amounted at the time of the final agreement to $265,833. By the final agreement he undertook to pay $211,750 for the bonds and $54,083 for the stock, and was to pay the latter sum in cash and the balance in six months, with interest.

Upon these facts it would have been error if the trial judge had taken the case from the jury and directed a verdict for the defendants.

It is sufficient to entitle a broker to compensation that the sale was effected through his agency as its procuring cause; and when his communications with the purchaser have been the cause or means of bringing the purchaser and his principal together, and the ·sale has resulted in consequence thereof, his right to compensation is perfect; and when the principal assumes exclusive charge of the negotiations, dispensing with the further efforts of the broker, and sees fit to vary the terms originally proposed, the circumstance that the sale is made upon the substituted terms will not defeat the broker's right to compensation. On the other hand, the broker is not entitled to compensation for unsuccessful efforts to make a sale, unless the failure has been caused by the fault of his principal; and when he has been allowed a reasonable time to effect the sale, and has failed, and the principal has in good faith terminated the agency, and effected the sale through his own efforts, the latter is not liable for commissions. Lloyd v. Matthews, 51 N. Y. 124, 132; Sussdorf v. Schmidt, 55 N. Y. 319; Wylie v. Marine Nat. Bank, 61 N. Y. 415; Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441; and Walton v. Chesebrough, 167 N. Y. 606, 60 N. E. 1121 affirming (Sup.) 57 N. Y. Supp. 687.

The law as thus stated was formulated in substance in the instructions given to the jury by the trial judge; and he properly advised them that inasmuch as it was not disputed that Donnell and the defendants had been brought together through the plaintiff's efforts, that after the interview of February 19th the plaintiff had made no further efforts to negotiate the sale, and that the sale was finally closed by the negotiations of the defendants conducted mainly by their own employé, the controlling question for their consideration was whether the plaintiff's version of that interview was the true one.

In view of these instructions it would have been mere repetition to have given the instruction asked for by the defendants in their sixth request.

The judgment is affirmed.