### PAYSENO v. SWENSEN et al.

(Circuit Court, D. Minnesota, Second Division. May 12, 1910.)

BROKERS (§ 57*)—RIGHT TO COMPENSATION—TRANSACTION NEGOTIATED DIFFERENT FROM THAT AUTHORIZED.

> To entitle a broker to recover on a contract by an owner of land to pay him a commission for making a sale of the land at a stated price, he must have fulfilled the contract by procuring a purchaser to whom a sale is made at such price, or who is willing and able to pay it, and it is not sufficient to procure one with whom the owner makes an exchange of lands.
>
> [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 66; Dec. Dig. § 57.*]

At Law. Action by Alsie N. Payseno against H. E. Swensen, John Swensen, C. Anderson, G. W. Allen, and H. L. Snell, surviving partners of the partnership of Allen & Snell, and as individuals. On motion for directed verdict at close of plaintiff's testimony. Motion sustained.

H. L. & J. W. Schmitt and Bessesen & Berry, for plaintiff.
J. N. Johnson and Royal A. Stone, for defendants.

WILLARD, District Judge (orally). I think that the plaintiff has shown that Allen & Snell were authorized by all the defendants to employ the Iowa Land Company to act as their agent for the sale of this land; that is, there is evidence from which the jury would be justified in finding that fact, and that under such authority they made the contract which is in evidence in the case.

The complaint alleges that by the terms of that contract the Iowa Land Company was entitled to a commission if there was a sale of the lands, or an exchange of the lands for other lands; but when the letters which prove the contract are examined it is seen that they did not authorize the Iowa Land Company to secure a person who would make an exchange of lands, and thereby earn a commission. The contract is explicit, and authorizes the Iowa Land Company to find a purchaser upon specified terms, and those terms are a sale for cash at a specified price for each acre. There is a little doubt as to whether the

commission of 50 cents an acre was to come out of that price, or was to be added to it; that doubt arising from some discrepancy between the terms of the letter and the words used in the heading of the list. But that is of no consequence here, because it is not claimed that the Iowa Land Company procured a purchaser who did buy upon the terms specified in the letter.

The plaintiff must recover, if at all, upon the contract, and in order to recover upon that contract he must show a compliance with it. There is neither allegation nor proof under which he can recover as upon a quantum meruit. The rule with regard to the right of a broker to recover his commission is laid down in the case of McGavock v. Woodlief, 20 How. 221, 15 L. Ed. 884, where it is said:

"The broker must complete the sale; that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on, before he is entitled to his commissions. Then he will be entitled to them, though the vendor refuse to go on and perfect the sale."

That same rule is practically laid down in the case of Francis v. Baker, 45 Minn. 83, 47 N. W. 452, to which attention has been called. Whatever is said in that case, and whatever has been said in the other cases to which my attention has been called, must be interpreted in the light of the facts of each particular case; and in this case in 45 Minn. 83, 47 N. W. 452, as I gathered from the reading of the case, it appeared that the plaintiff did in fact procure Collom as a purchaser, and Collom did make a contract upon the terms originally given to the plaintiff. The question in that case apparently was not whether Collom was a person able to carry out the contract, but the question was whether, Collom having been presented to the owner of the land as a purchaser, it was not for the principal to decide whether Collom was capable of carrying out the contract or not, and, having accepted Collom, he could not afterward say that Collom was not able to fulfill.

My attention has been called by plaintiff to the case of Love v. Scatcherd, 146 Fed. 1, 77 C. C. A. 1, decided in the Circuit Court of Appeals for the Sixth Circuit. In that case the contract between the parties was evidenced by a letter of August 18, 1903, which is as follows, written to the plaintiff, a broker, and signed by the defendants, owners of the land:

"We are thinking of taking our property out of the market, but if you have anybody who is reliable, and with whom you can put us in communication regarding this property, we would protect you on a commission of 5 per cent. We would want to have an opportunity to look up the party as to his responsibility before making prices, and if this were satisfactory, before doing so, we would arrange all matters in detail with you, in any event we would agree to protect you in case you furnish us names," etc.

It is readily seen how different that contract is from the contract in the case at bar. There no terms were mentioned, and the agent was not required to produce a purchaser who would buy at a specified price; but, having produced a purchaser with whom the owner made a contract, it was held, and very properly, that the broker was entitled to his commission. I entirely agree that it is not necessary, the broker having produced a purchaser and having introduced him to the owner, that the broker should follow up and complete the contract. That is

for the owner to do himself; but, before the broker is entitled to that commission provided for in the contract between himself and the owner, he must show that a contract was finally closed between the proposed purchaser and the owner upon terms which the broker was authorized to make.

The case of McMillin v. Beves, 147 Fed. 218, 77 C. C. A. 444, was decided by the Circuit Court of Appeals of the Second Circuit, and showed these facts:

"The defendants requested plaintiff to find a purchaser for $275,000 mortgage bonds of a traction company operating certain street railroads in Oshkosh, Wis., and to offer them at a specified price with a certain amount of the stock of the company as a bonus, and promised the plaintiff a commission upon the sale of 2½ per cent. Pursuant to that proposition the plaintiff entered into communications with one Donnell, of Boston, and at the suggestion of Donnell had several interviews with the defendants to obtain information relative to the value of the securities, and reported the results to Donnell. February 19th plaintiff brought Donnell to the office of defendants in New York City, introduced him, and told them he had offered the bonds to Donnell on the terms which they had suggested, and the defendants promised him that his commission should be taken care of."

To my mind that is the vital point in that case. In addition to the original contract of employment between the owners of the bonds and the broker, there was a subsequent contract. It is immaterial, so far as this question is concerned and this case is concerned, whether Donnell finally bought these bonds on the terms which had been originally asked, because when he was introduced by the plaintiff to the owners of the bonds they made a new contract with the broker, and said that his commission should be taken care of. This is the case from which the quotation read by Mr. Schmitt was taken. There it was said that the broker was entitled to a commission, though the contract was made upon modified terms; but, as I said before, that must be construed with reference to the precise case which is under discussion. In that precise case the jury could find, and the court could very well hold, that by virtue of the contract when the proposed purchaser was introduced to the owners of the bonds they agreed to pay a commission to the broker, no matter whether the sale was made upon the terms asked or not.

In the case of Colonial Trust Company v. Pacific Packing & Navigation Company, 158 Fed. 277, 85 C. C. A. 539, decided in the Circuit Court of Appeals, Third Circuit, the contract was as follows:

"We authorize you to offer and sell our present stock of canned salmon on the following terms, to wit: First. All sales to be made subject to our instructions as to selling price from time to time and upon the customary terms for domestic sales," etc.

Then follow other terms of the contract which are not important. The distinction between this case and the case at bar is very apparent, because it will be seen in that case that no terms or prices were in any way specified in the contract between the owners of the salmon and the broker. All that he was required to do was to produce a purchaser with whom the owners might contract, and they were at perfect liberty to determine and fix their own terms and prices. The broker was en-

titled to his commission when he produced a purchaser with whom the owners finally made a contract.

My attention has been called to the case of Hubachek v. Hazzard, 83 Minn. 437, 86 N. W. 426. I do not consider that case as controlling or binding upon this court. The later case in the same court of Holcomb v. Stafford, 102 Minn. 233, 113 N. W. 449, is in conformity with what I believe to be the law. In this, as in other similar cases, there must be a compliance with the contract by the person who seeks to enforce it.

In the case at bar, if, after Bickley had been introduced by the plaintiff, assuming that he was introduced by him, Bickley and the owners had made a contract for the sale of the land at 50 cents an acre, there would be as much reason for claiming that the Iowa Land Company was entitled to a commission of 50 cents an acre as there is now. I do not see how a real estate broker stands upon any other basis than any other contractor, and unless he fulfills his contract, and produces a purchaser who is willing to buy upon the terms named, he cannot recover. Who knows whether the defendants in this case would have been willing to pay a commission of 50 cents an acre if they received $8, instead of $10, an acre for the land? In fact, they stated to the plaintiff, in the letter of October 5, 1903, written before their contract with Bickley was made, that they had no intention of paying plaintiff a commission of 50 cents an acre if they should finally make an exchange, instead of a sale, of the land. The offer of March 2, 1903, to pay 50 cents an acre, was based upon the direct terms of that letter, namely, that the lands should be sold for the prices therein named; and in order to entitle the plaintiff to recover the commission of 50 cents an acre he must have produced a purchaser who bought upon these terms. This he never did.

So, upon the entire evidence, the plaintiff, in my opinion, cannot recover, and I will grant the motion of the defendants.