### KERR et al. v. PARRIS.

No. 15848—Opinion Filed Oct. 6 1925.

Rehearing Denied Dec. 8, 1925.

**Brokers — Right to Commission as Procuring Cause.**

It is sufficient to entitle a broker to his

commission on a sale of certain oil and gas leases that the sale was effected through his agency as its procuring cause, and when his communications with the purchaser were the means of bringing the purchaser and his principal together and a sale resulted as a consequence thereof, his right to his commission is not defeated because the principal assumed exclusive charge of the subsequent negotiations, dispensing with his services, nor because the sale was finally made on substituted terms resulting from such final negotiations satisfactory to the principal.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; Enloe V. Vernor, Assigned Judge.

Action by G. L. Parris against P. M. Kerr and others. From judgment in favor of plaintiff, defendants bring error. Affirmed.

M. A. Breckenridge and Chas. R. Bostick, for plaintiffs in error.

West, Gibson, Sherman, Davidson & Hull, for defendant in error.

Opinion by PINKHAM, C. This was an action instituted by the defendant in error, G. L. Parris, against the plaintiffs in error, P. M. Kerr, J. M. Gillette, and Carl W. Gillette, to recover a real estate broker's commission in the sale of certain oil and gas leases.

The petition of the plaintiff alleges his employment by the defendants to find a purchaser for the following described property owned by them:

"An oil and gas lease covering the north half of the northwest quarter of section 36, township 20, range 8, in Pawnee county, for the sum of $50,000; and,

"An oil and gas lease covering the northeast quarter of section 36, township 20, range 8 in Pawnee county, for $300,000, said $300,000 to be one-half cash and the remaining one-half to be paid out of the oil produced from the lands under said lease"

—and it is alleged that defendants agreed to sell all of said last mentioned lease or any part thereof at the same ratio; that the defendants agreed to pay the plaintiff a commission of five per cent. of the purchase price if he found and produced to them a purchaser ready, able, and willing to buy said properties upon the terms offered; that he produced as a purchaser E. P. Harwell, for the tract first named, and that it had been sold through his agency on April 7, 1922, for $50,000.

The plaintiff further alleged that the same purchaser, E. P. Harwell, also pur-

chased from defendants, on or about April 12, 1922, an oil and gas lease belonging to the defendants in so far as it covered half of the northeast quarter of said section 36 for $100,000 in cash and $100,000 in oil produced from said lease, except that the defendant J. M. Gillette retained his interest in said lease, the amount and extent of which is to the plaintiff unknown, and refused to sell the same to said Harwell, although said Harwell was then willing and able to purchase said interest at the price fixed by the defendants.

The defendants filed their answer, denying generally the allegations of the petition except those specifically admitted. The defendants admitted that plaintiff performed services for them as a broker in the sale to E. P. Harwell on April 10, 1922, of an oil and gas lease covering the north half of the northwest quarter of 36-20-8, in the sum of $50,000, but charged that the plaintiff had been paid in full for said services.

At the conclusion of the introduction of testimony at the trial, both plaintiff and defendants moved the court for an instructed verdict, and the court directed a verdict for the plaintiff in the sum of $10,000. Judgment was rendered on the jury's verdict, exceptions taken by defendants, defendants' motion for a new trial was overruled, exceptions saved, and the cause comes regularly on appeal by the defendants to this court by petition in error and case-made attached.

For reversal of the judgment, defendants present two general propositions: First, the court erred in directing a verdict in behalf of defendant in error and against plaintiffs in error for the sum of $10,000; and, second, that the court erred in refusing to direct a verdict in favor of plaintiffs in error.

Numerous decisions of this court are cited in the brief of defendants, which announce in varying language the well established rule that when there is any controverted question of fact before the jury, it is error for the court to direct a verdict, and that the trial court cannot direct a verdict when it is necessary to weigh the evidence to determine where the preponderance lies. Matthews v. Mounts, 81 Okla. 245, 197 Pac. 708. And it is earnestly contended that under the authorities cited, the evidence of the plaintiff was of such unsatisfactory nature that had the defendants put on no testimony, the trial court would have committed error had it not submitted the question of defendants' liability to the jury.

A considerable portion of defendants' brief is devoted to a discussion of what occurred in connection with the sale of the north half of the northwest quarter of the land involved, and the plaintiff's commission for that particular sale. The record discloses that just before the leases in question were listed with the plaintiff for sale, a discovery well had been brought in in that field, and the defendants were desirous of selling their leases and listed them with the plaintiff. At that time the price put upon the northwest quarter of section 36-20-8 was $60,000; the north half of the northeast quarter of section 36 was priced at $60,000; and the south half of the northeast quarter of section 36 was priced originally at $150,000, but later raised by defendants to $200,000. That the plaintiff submitted all of the acreage in question to E. P. Harwell; that he exhibited to Harwell a plat, with all of the acreage on it and the location of the discovery well and procured the well records for Harwell's examination, is not disputed. It appears that Harwell was willing to pay $50,000 for the north half of the northwest quarter, and that the plaintiff reported that matter to the defendants, who finally agreed to take $50,000 for the north half of the northwest quarter, which had been listed with plaintiff at $60,000, provided the plaintiff would accept $1,000 for his commission on that particular 80 acres. The plaintiff testified that he stated to the defendants that he would accept $1,000, provided they would pay five per cent. commission on the balance of the acreage, including this particular tract if he succeeded in selling an additional 80-acre tract.

The trial court found that, so far as the northwest quarter was concerned, the plaintiff and defendants had a settlement as to the commission for the sale of that particular tract. It therefore becomes unnecessary to consider a conflict in the evidence relating to an issue which is out of the case and which issue was determined in favor of the defendants.

The record discloses without conflict that E. P. Harwell, the purchaser of the northwest quarter, also purchased the west half of the northeast quarter at the rates of $100,000 in cash and $100,000 in oil, the defendant Gillette reserving a three-eighths interest. The question to be here determined is whether the plaintiff is entitled to the commission of $10,000 for the sale of the west half of the northeast quarter given him by the judgment of the court. It is contended that the plaintiff alleged an employment to sell a lease on the northeast quarter of section 36 for $300,000, half in cash and half in oil, but that he proved a contract of employment to sell the two 80's comprising that tract for $260,000, and did not mention the fact that part of the compensation was to be in oil.

The defendant P. M. Kerr, who listed the properties with plaintiff and put the price on them, testified that the plaintiff "called to know if that acreage was for sale and I told him it was and I gave the prices on it." After detailing that he put the price of $60,000 on the north half of the northwest quarter, which Harwell afterward bought for $50,000 on April 7th, and which is not now involved, the defendant Kerr stated that the whole of the northeast quarter in one piece was not listed with the plaintiff, but that it was divided into north and south 80's. He also testified that he put the price on the north 80 as $50,000 in money and $50,000 in oil, and for the south half as $100,000 in money and $100,000 in oil. It appears, therefore, that the plaintiff's petition, alleging that the price fixed on the northeast quarter as divided into north and south 80's was $300,000, one-half in cash and one-half in oil, substantially agrees with the testimony of the defendant Kerr. The plaintiff testified that the price which he put on the northeast quarter to Harwell was $60,000 on the north 80 and $150,000 on the south 80, but which was later raised by defendants to $200,000, which information he gave to Harwell. Nothing was said, it appears, about part of the purchase price being in oil, and the plaintiff testified that nothing was said about oil when the property was listed with him, but that the defendant Kerr said if the purchaser was Harwell, he would be willing to take his note for part of the purchase price. It is true there was some conflict as to what the price originally was, but we do not think it is material. The defendants are complaining that the plaintiff did not give Harwell the exact price and terms upon which the properties were listed with him, and that his quotation to Harwell was $260,000 in money whereas the price listed with him, according to the defendant Kerr, was only $150,000 in money, the remainder of the price being in oil. The purchaser, Harwell, did not reject the offer, but, with the knowledge as obtained from plaintiff that the price involved more outlay of actual cash than the sellers contemplated, he took the matter under consideration, and at the request of plaintiff, who had made daily trips to his office for the purpose of nego-

tiating the sale of the northeast quarter or some portion of it, went so far as to start on a trip to personally inspect the property.

It must be borne in mind that this is not a suit for commissions based upon an accepted offer from which no sale resulted. If the defendants had put a price 'of $200,000, whether for money or for money and oil for both 80's, and the plaintiff, as broker, had offered them at $260,000 in money and the defendants had refused to sell, the plaintiff could not recover, as he had no authority to make an offer of $260,000; but the defendants, dealing with the purchaser, whom the plaintiff had interested, sold one-half of the lease on the northeast quarter for $200,000, half cash and half oil, as they had originally contemplated, although it appears it was a different half.

The conflict between plaintiff and the defendant Kerr, as to what the prices were upon the two parts of the northeast quarter, as originally divided and as listed wth plaintiff, is not, we think, material in determining the question of the right of the plaintiff to recover a commission for the sale of the property purchased by Harwell. The question is whether the plaintiff found a purchaser for any part of the properties listed with him for sale and at a price satisfactory to defendants. The commission for which the plaintiff sues is not based on the prices originally fixed, but upon the price at which the sale of the west 80 of the northeast quarter was made under an agreement between defendants and the purchaser that plaintiff had found.

It is the theory of the defendants that the west half of the northeast quarter was never listed with the plaintiff for sale, and that they themselves sold that 80, notwithstanding the admitted fact that it was part of the property listed with him. That it was the broker's services and efforts that brought the parties together and which resulted in the sale of the lease as to the 80 acres in question we think clearly appears from the facts disclosed by the record.

The purchaser, Harwell, testified that the plaintiff, Parris, first called his attention to the properties involved; that he purchased the 80 acres (being the north half of the northwest quarter) on April 7th; that the plaintiff called on him every day after that concerning other property; that as he had promised the plaintiff, he started one day to go out and see the discovery well in the vicinity of the leases in question and get the lay of the ground, but that the train was late and he did not go, but came back

to his office; that upon the return to his office he sent his brother, C. C. Harwell, to the defendant J. M. Gillette's office to get his structural map of the property; that his brother went to Mr. Gillette's office and returned in company with the defendant J. M. Gillette; that the same afternoon he purchased a half of the northeast quarter, namely the west half, or the west 80 of that quarter, excepting the personal interest of J. M. Gillette, but which interest the witness testified he was ready, able, and willing to buy along with the interest of the other owners; that the purchase price of the 80 acres was $100,000 in cash and $100,-000 in oil; that no other person or broker excepting the plaintiff had brought the property to his attention.

The plaintiff testified, and he is nowhere contradicted, that the properties had not been withdrawn from him as the broker and that he never had any notice from either of the defendants that the northeast quarter in question was being divided differently than it had been divided at the time it was originally listed with him.

Counsel for defendants say in their brief that the plaintiff, contrary to what he alleged in his petition, submitted to Harwell the northeast quarter divided into north and south halves, and that according to Mr. Harwell's version, the entire northeast quarter was submitted to him by the plaintiff in north and south halves, but for all cash. The conflict, which it is contended is shown, is between what the plaintiff alleged and what he himself testified to, not a conflict between the testimony of the plaintiff and that of the defendants, but it must be remembered that the offer was submitted to Harwell by the plaintiff as to either 80 and the defendants and the purchaser themselves continued the negotiations begun by the plaintiff, having for its object a sale of the lease on the northeast quarter or some portion of it, and reached an agreement whereby the lease was divided into east and west 80's instead of north and south 80's, the purchaser buying the west 80 at $200,000. In these circumstances the price put upon the 80's as originaly divided became immaterial.

The record clearly discloses without conflict that it was the plaintiff and no one else who first interested Harwell, the purchaser, and continued diligently to urge the sale. These facts are established by the uncontradicted testimony of the purchaser, E. P. Harwell, and his brother, C. C. Harwell, so that the only question in the case is

whether, under these facts, the plaintiff can be said, as a matter of law, to be the procuring cause of the sale, notwithstanding the fact that the actual agreement for that sale was made by defendants without the personal assistance of the plaintiff, whose agency had never been revoked and who had received no notice of the intention of defendants to make a different division of the acreage embraced in the lease.

"A broker employed to secure a lease is entitled to his commission if during the continuance of his agency he is the efficient or procuring cause of the execution of the lease, though the actual agreement for the lease is made by the principal with the owner of the land and the broker will be regarded as the procuring and efficient cause, if his efforts are the foundation upon which the negotiations resulting in the exact sale are begun." Treese v. Shoemaker, 80 Okla. 235, 195 Pac. 766.

In Wheelan v. Hunt, 37 Okla. 523, 133 Pac. 52, the court said:

"To be the procuring cause of a sale a broker must first call the purchaser's attention to the property and start negotiations which culminate in the sale thereof."

The contention that the west half of the northeast quarter was never listed with the plaintiff, as there had been listed with him only the north half and south half of that quarter section, and that defendants had a right to make a different division of the land covered by the lease and sell it direct to Mr. Harwell without being liable for commissions, cannot be sustained.

In McMillin v. Beves, 147 Fed. 218, it was held in the syllabus:

"It is sufficient to entitle a broker to his commission on a sale of bonds that the sale was effected through his agency as its procuring cause, and when his communications with the purchaser were the means of bringing the purchaser and his principal together, and a sale results as a consequence thereof, his right to his commission is not defeated because the principal assumes exclusive charge of the subsequent negotiations, dispensing with his services, nor because the sale is finally made on substituted terms resulting from such final negotiations."

The undisputed facts are that the plaintiff found the purchaser to whom the defendants sold the lease on the northeast quarter of section 36 in so far as the west half of that quarter section was concerned, notwithstanding the fact that that sale was made under a private and secret arrangement between the parties themselves and at a price which resulted in being the same in the aggregate as they had given to the plaintiff on the south half of the quarter section involved, and at which price it was submitted by the plaintiff to Harwell, namely, $200,000.

In Hoadley v. Savings Bank of Danbury, 44 L. R. A. 321, it was held by the Connecticut Supreme Court:

"A broker may be found to be the procuring cause of sale where he calls a person's attention to a certain piece of property and gives him information as to how to obtain admission thereto, although the owner, without the broker's knowledge, subsequently takes up the negotiation and completes the sale."

Counsel for defendants, in their brief, direct special attention to the case of Crain v. Miles (Mo.) 134 S. W. 52, in which case it is said the law which governs the instant case is well expressed, and the following language quoted in defendants' brief is pointed out as applicable to the present case:

"And where an agent fails to get his offer within the terms of his authorization, and the purchaser afterwards buys the same piece of property on the same or less terms than those on which the first agent had authority to sell, the chain of causation would be broken."

The case cited, we think, is not in point. There it appears there were several brokers or agents who were apparently trying to sell the same property under employment by the defendant. It is well established that two agents acting independently of each other cannot be the procuring cause of a sale nor can the efforts of both, unless acting jointly, constitute a single procuring cause. The Crain Case, supra, as well as numerous other authorities cited in defendants' brief, are not, we think, applicable to the instant case.

To hold, under such a state of facts as is disclosed by the record, that the plaintiff in the instant case would not be entitled to recover any compensation for his services would be to ignore the dictates of reason and the weight of authorities.

In view of the conclusions at which we have arrived, the second proposition of defendants, to the effect that the court erred in not directing a verdict for the defendants, cannot be sustained.

Various other questions are presented in defendants' brief which we deem unnecessary to discuss for the reasons above stated.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 9 C. J. pp. 600, § 89, 612, § 95, 613, § 96, 615, §97, 620, § 99; anno. 44 L. R. A. 321; 4 R. C. L. p. 304; 1 R. C. L. Supp. p. 1112; 4 R. C. L. Supp. p. 262; 5 R. C. L. Supp. p. 237.