## OKLAHOMA RY. CO. et al. v. BOYD.

No. 22188.    Nov. 28, 1933.

Rehearing Denied Jan. 9, 1934.

Application to File Second Petition for Rehearing Denied Jan. 16, 1934.

A. L. McRill, Municipal Counselor, A. P. Van Meter, Assistant Municipal Counselor, and Hayes, Richardson, Shartel, Gilliland & Jordan, for plaintiffs in error.

Ledbetter, Stuart, Bell & Ledbetter and A. G. Morrison & Sons, for defendant in error.

McNEILL, J.    This action in tort was commenced in the district court of Canadian county by M. A. Boyd against the defendants, Oklahoma Railway Company and the city of Oklahoma City, on March 4, 1925.    Plaintiff alleged damages to her farm resulting from an overflow of her lands caused by the reservoir of Oklahoma City and an embankment of the railway company.    Plaintiff alleged that her entire farm was covered with sediment of some kind left by the flood waters, whereby the value of her land was decreased from $250 per acre to the sum of $150 per acre.    This court in the case of Oklahoma Railway Company v. Boyd, 140 Okla. 45, 282 P. 157, determined the issues and liability of said defendants, wherein it held that said defendants were jointly liable and the parties in the action at bar agreed to be bound by said decision of this court as to the issues of liability.

The only question for determination in the instant case is the amount of damages to plaintiff's farm as the result of the flood of 1923.    The jury rendered a verdict on June 4, 1930, in the sum of $10,000 in favor of plaintiff.    It is from the judgment rendered thereon that defendants have appealed.

It was stipulated by the attorneys for both sides that the case of Woods v. Oklahoma Railway Company and the case of M. A. Boyd v. Oklahoma Railway Company et al., the instant case, both being filed in the district court of Canadian county, should be consolidated for the purposes of trial and tried together before the same jury, with separate verdicts to be rendered

in each case. It was stipulated in part as follows:

"The only question involved to be presented for trial by this jury is the amount of damages, if any, sustained by reason of the overflow during the month of October, 1923."

The court thus limited the issue to this question.

Mr. W. H. Boyd, who was called as a witness for plaintiff, testified as to the silt and sediment, as follows:

"It was an inch to an inch and a half thick. It was soft at the time. It stayed soft until the sun and wind started to dry it, then it gradually began to get hard. After the lapse of time, well, we started to plant the land and it did not mix with the other ground and it would be in chunks. As you would go along plowing and turn over a little bit with the plow and it would look like what we describe as Texas black gumbo or gumbo land, sticky. * * *

"Yes, sir; that is identically the same. It shows here there is a white substance; after a heavy rain you can go around a plowed field and the white will come to the top of the ground, * * * and it hardens and after a rain it will be very noticeable and harden within a week or ten days after a rain is gone."

Mr. Bernard also testified on behalf of plaintiff that the land was injured by the deposit of the alkali sediment and that this deposit had a tendency to kill any crop on the land; that the sediment would not mix with the soil, and he further said:

"Q. Do you mean to say that the river brought down that kind of stuff (referring to a sample) and just dropped it along that land out there? A. All over it like that. * * * A. It has been plowed, but it don't seem to mix with the soil. You can find small particles of the same kind of stuff in the soil, but not as large as that."

Mr. Kelly testified that there were great ditches cut through the corner of the land and that the land had evidence of silt and mud left upon it by the flood.

The witnesses for plaintiff testified, in substance, that the depreciation of the land was about $100 per acre, while the witnesses produced by the defendants testified that no damages had been sustained.

Defendants contend for the following propositions:

"(1) Before damages for a permanent injury can be recovered for an overflow of land, it is necessary to prove that the cause of the injury is permanent in character, and not removable by the expenditure of labor or money, or that the injury itself is permanent.

"(2) Where the cause of an overflow is removable by the expenditure of labor and money, or where there is no permanent injury to the land overflowed, the measure of damages is not the difference between the market value before the overflow and the market value immediately after, but instead the measure is the damages accruing on account of the impaired or lost use up to the time of the commencement of the action."

It is the theory of defendants that the damages caused to plaintiff's land by the overflow were temporary and not permanent, and that plaintiff failed to prove a permanent injury to her land. Defendants insist that their testimony showed that the land was as good as it ever was from a physical standpoint, and that it was growing crops and that they were as good if not better than they were prior to the time of the flood.

We consider it unnecessary to enter into a discussion of the abatableness of the cause of the damages to plaintiff's land. Plaintiff's proof was directed to the permanent injury to the land in question. The court confined the proof to that issue without apparent objection on behalf of the defendants.

Instruction No. 12 was as follows:

"You are further instructed that the measure of damages in this case is the difference between the fair market value of said lands immediately prior to the flood of October, 1923, and the fair market value of said lands immediately thereafter, if any."

Instruction No. 4 of the court submitted the following:

"So, the sole and only question that is left for you to determine is the damages that plaintiffs, or either of them, sustained to their lands, if any, by reason of the flood of October, 1923."

No exception was made to this instruction. During the course of the oral argument, the court gave an oral instruction without objection thereto by counsel for defendants, as follows:

"The Court: I will say this further, gentlemen: You will add nothing, that is, you will not undertake to consider any damages to the buildings and to the alfalfa separate and distinct from the land, but all those things will simply go to whatever damage, if there was any, to the land itself, and must only be considered with reference to the actual damage to the land. * * *

"The Court: That is true. All you can look to those things for is in determining the amount of damages actually to the land, they are just simply circumstances and conditions you may look to in determining what, in your judgment, the damage to the land is, if any."

Mr. Fogg, one of the attorneys of the defendant, stated to the court in the presence of the jury, as follows:

"The measure of damages on that was what the land was worth before and after."

This statement of counsel followed a statement of the court, to wit:

"I think he may show the average production of the farm before the flood and what the production was thereafter."

Plaintiffs in error, defendants below, acquiesced in the theory that the case was being tried to determine permanent damages to the land by reason of the overflow during the month of October, 1923, instead of temporary injury or temporary damages.

According to plaintiff's contention, as shown by the evidence, the damages to the farm affected the entire property to a substantial degree. It was not susceptible of being restored to its original condition. The productiveness of the soil had been interfered with by the deposits of silt which would not mix with the soil. There is nothing in the record to show that restoration to its prior condition was possible or practical through the processes of time or nature.

Defendants denied that plaintiff sustained any damages. They offered no testimony to show that the damages were temporary in character, such as tending to show a loss of use of land, depreciation of its rental value, destruction of crops, cost of restoring same to its original condition, or that the injury sustained was susceptible of remedy. The record sustains permanent injury to the land.

Counsel for defendants offered no requested instruction on the measure of damages, but in their brief urge that the instruction covering the main issue involved, to wit, the measure of damages, was error in that no permanent injury or permanent cause of injury to the land was proved.

In 14 R. C. L. section 56, page 795. there is announced the following rule of law, to wit:

"It is hardly possible for any court to charge in such language as to comprehend every possible point of view in which the case might be put or to notice every exception to the general rules of law. Therefore it is generally considered to be the duty of counsel to aid the court in the function of instructing the jury. And the very purpose of permitting requests to charge is that the jury may be fully informed as to all the law governing the case, and the trial court enabled to correct at once any mistakes that may have been made in instructing them. The rule is therefore firmly established that where the charge of the court does not cover all phases of the case, counsel is bound to call its attention to the omission by an appropriate request or be precluded from making such failure available as reversible error. The rule is also well settled that a party must, if he desires them, request the court to give more definite, or more specific or fuller instructions."

Thompson on Trials (2d Ed.) sec. 2341, p. 1606, supported by many authorities, states as follows:

"It is, then, a general rule of procedure, subject, in this country, to a few statutory innovations, that, mere nondirection, partial or total, is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused. A party cannot, by merely excepting to a charge, make it the foundation for an assignment of error, that it is indefinite or incomplete. The rule rests upon the soundest foundation. The facts of the case come to the mind of the judge as matters of first impression, and it will often be extremely difficult for him, in the short time allowed for a trial before a jury, and in the midst of such a trial, to prepare a series of instructions applicable to all the hypotheses presented by the evidence. On the other hand, counsel are presumed to have studied their case beforehand; to come to the court with a fair understanding of the facts which will probably be proved, and with a full knowledge of the law applicable to those facts. It is, therefore, their duty to give attention to the charge of the judge. and if, in their opinion, it omits to give direction as to the law applicable to any essential feature of the evidence, to call his attention to the omission and to request appropriate suppletory instructions; and where they fail thus to call his attention to something which he may fairly be supposed to have omitted from inadvertence, they ought not to be allowed to complain of the omission in an appellate court. A rule which would allow them to do so would be extremely inconvenient. It would multiply new trials and reversals. and often on grounds which have no connection whatever with the merits."

The same author, in the foot-note, on page 1607, states as follows:

"The English rule seems to be that non-

direction, where specific direction is not requested, is no ground of new trial, unless it produced a verdict against the evidence."

In the case of Muskogee Electric Traction Co. v. Richards, 97 Okla. 61, 222 P. 265, this court said:

"We consider the plaintiff's argument answering the defendant on this point very fitting that the defendant is not in a position to complain of this error, for the reason that the record discloses the defendant was represented by able counsel, who sat by when this instruction was given by the court, and failed to point out the objectionable language and to render any assistance to prevent the error complained of, and contented themselves by simply saving an exception. This court has held that it is the duty of the defendant in damage suits to present to the court, by way of requested instructions, or in some manner to call the court's attention to the defendant's theory as to what matters the jury may consider in assessing damages, and in case of failure on the part of the defendant to do so, and a verdict is rendered which is supported by the evidence and which from the evidence is not excessive, the cause will not be reversed because the court's charge may not accurately define the measure of damages. This argument is supported by the following well-considered cases: Fort Smith & W. Ry. Co. v. Moore, 66 Okla. 322, 169 P. 904; Lusk v. Kennedy, (73 Okla. 307) 176 P. 502; Dodson & Williams v. Parsons, 62 Okla. 298, 162 P. 1090; Potts v. Zolinger, 79 Okla. 262, 192 P. 1099."

In the case of Livingston v. Chicago, R. I. & P. Ry. Co., 41 Oka. 505, 139 P. 260, this court said:

"No instructions were requested by the plaintiff. It is very generally held that, where a special instruction is desired, it is the duty of counsel to prepare and submit to the court such desired instruction in writing, properly numbered and signed, and, upon timely delivery to the court, request that it be given, and that upon a failure so to do, where the court has given general instructions applicable to the issues and the evidence, an appellate court will not consider as error the court's failure to instruct upon its own motion upon any given proposition. Moore v. O'Dell, 27 Okla. 194, 111 P. 308; First Nat. Bank v. Tevis, 29 Okla. 714, 119 P. 218; Chicago, Rock Island & Pacific Ry. Co. v. Baroni, 32 Okla. 540, 122 P. 926; St. Louis & S. F. R. Co. v. Crowell, 33 Okla. 773, 127 P. 1063. The same rule applies where it is desired that the court more definitely or fully state any proposition embraced in the charge. Huff v. Territory, 15 Okla. 376, 85 P. 241. No requested instruction having been prepared and submitted by counsel, we cannot say that the court's failure to instruct constituted error."

See, also, Lusk v. Kennedy, 73 Okla. 307, 176 P. 502; Nelson v. Green, 132 Okla. 29, 269 P. 299; First National Bank of Mill Creek v. Langston, 32 Okla. 795, 124 P. 308; C., R. I. & P. Ry Co. v. Radford, 36 Okla. 657, 129 P. 834; Miller v. Tennis, 140 Okla. 185, 282 P. 345.

In the case of Suttle v. Brown, 137 Ill. App. 438, it was held:

"Errors in rulings upon instructions will not reverse where it appears that such errors refer solely to the question of damages and the damages awarded were amply sustained by the evidence."

Section 541, paragraph 5, C. O. S. 1921, [O. S. 1931, sec. 359], reads:

"When the evidence is concluded and either party desires special instructions to be given to the jury such instructions shall be reduced to writing, numbered, and signed by the party or his attorney asking the same, and delivered to the court. The court shall give general instructions to the jury, which shall be in writing, and be numbered, and signed by the judge, if required by either party."

An examination of the record shows that the instructions, taken as a whole, did not mislead the jury, and that there was competent evidence to show the damages alleged. The verdict of the jury is not against the evidence. We find no prejudicial error in the record.

Judgment affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, and WELCH, JJ., concur.

RILEY, C. J., and OSBORN, BAYLESS, and BUSBY, JJ., absent.