## PETROLEUM PIPE LINE CO. v. LUNDY.

No. 24817.    March 17, 1936.

Everest, McKenzie, Halley & Gibbens, for plaintiff in error.

Harper & Lee, for defendant in error.

PER CURIAM. T. F. Lundy brought suit in the court of common pleas of Tulsa county against the Petroleum Pipe Line Company, a corporation, to recover a broker's commission alleged to be due for the sale of oil belonging to the Petroleum Pipe Line Company to the Fred Norton Oil Company and its assigns. From a judgment in favor of Lundy for $1,558.50, the Petroleum Pipe Line Company appeals. The parties will be referred to as they appeared in the court below, that is, as plaintiff and defendant.

Defendant first contends that the evidence is insufficient to sustain the verdict of the jury, and that the trial court erred in overruling its demurrer to the evidence and its motion for a directed verdict.

From the evidence it seems to be undisputed that Lundy approached the representatives of the Petroleum Pipe Line Company with a view of interesting them in a prospective sale of oil to the Fred Norton Oil Company and its assigns, and that as a result of his efforts Mr. Galbreath, a representative of the Petroleum Pipe Line Company, came to Tulsa to see Mr. Lundy about the matter and was taken by him over to the office of the Fred Norton Oil Company and introduced to Mr. Fred Norton, where a tentative sale of oil from the Petroleum Pipe Line Company to Norton and his assigns was arranged, certain instruments in writing, dated March 30, 1932. being signed by the parties. It is unnecessary to set these instruments out in full, but the first of these instruments provided in substance that the Petroleum Pipe Line Company agreed to sell to Fred Norton, or his assigns. a minimum of two tank cars and a maximum of five tank cars of oil per day for a period of six months, at the posted price, deliveries to commence on or about April 10, 1932. Payment therefor was to be made to the Petroleum Pipe Line Company in the form of sight drafts drawn upon Norton, or his assigns, at the time the oil was billed and invoiced. Norton, or his assigns, were to make sufficient financial guarantees that the drafts would be paid upon presentation. Lundy and Norton indorsed their acceptance in writing at the time upon this instrument, which was signed by Mr. Galbreath on behalf of the Petroleum Pipe Line Company. The second instrument was in the form of a letter addressed to Fred Norton and signed by Galbreath on behalf of the Petroleum Pipe Line Company. reciting that Lundy should receive two cents per barrel on all oil sold under the first instrument, and that Fred Norton should receive one cent per barrel on the oil, and that Norton should assign to the Petroleum Pipe Line Company one-half of the tank earnings of the tank cars used in the transportation of the oil sold under the first instrument. The letter then concludes:

"If the above is in accordance with our agreement, your signature in the space provided below will constitute your acceptance."

Lundy and Norton indorsed their acceptance upon the letter at the same time the first instrument was signed by them.

Concededly, no oil was ever sold by the Petroleum Pipe Line Company to Fred Norton under this agreement. Both plaintiff and defendant agree that the terms of the agreement evidenced by the foregoing instrument were never carried out. However, it appears from the evidence that 163 cars of oil were sold by the Petroleum Pipe Line Company to Norton, or his assigns, a short time later, and it does not appear that the negotiations between the Petroleum Pipe Line Company and Norton were ever broken off, although Lundy appears to have had very little, if anything, to do with the negotiations after March 30, 1932, the date the instruments were signed.

Defendant urges that the oil was sold in good faith under arrangements subsequently entered into between the Petroleum Pipe Line Company and Norton, 'and that plaintiff was not the procuring cause of the sale so made. The evidence as to whether Lundy was the procuring cause of the sale was in substantial conflict, and presented a jury question, which was submitted by the trial court under proper instructions. According to plaintiff's evidence, both Mr. Galbreath and Mr. Norton talked to him after March 30th, and told him in substance that they were still trying to carry out their original agreement and that there was some difficulty about making satisfactory financial guarantees for payment for the oil, and that they were hav .

ing to make some different arrangements. At no time after March 30th was plaintiff ever requested by anyone to assist in closing the deal. The mere fact that the oil was finally sold under terms different from those set out in the memoranda of the parties executed March 30th is not sufficient to deprive plaintiff of his commission, if the jury believed, as they evidently did believe, that his efforts were the procuring cause of the sale. Neither is the fact that Galbreath in closing the sale with Norton saw fit to attend to the matter personally without the services of the defendant sufficient to prevent plaintiff from recovering in this action.

"It is sufficient to entitle a broker to his commission on a sale of certain oil and gas leases that the sale was effected through his agency as its procuring cause, and, when his communications with the purchaser were the means of bringing the purchaser and his principal together, and a sale resulted as a consequence thereof, his right to his commission is not defeated because the principal assumed exclusive charge of the subsequent negotiations, dispensing with his services, nor because the sale was finally made on substituted terms resulting from such final negotiations satisfactory to the principal." Kerr et al. v. Parris, 115 Okla. 268, 242 P. 170.

Under the state of the record, this court cannot say, as a matter of law, that the efforts of plaintiff were not the procuring cause of the sale of the oil. The question was one of fact, upon which the jury has found for the plaintiff, and their verdict is conclusive.

"In a law action, the verdict of the jury is conclusive as to all disputed facts, and to all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this court will not invade the province of the jury, and will not disturb the verdict of the jury." Freed Furniture Co. v. Criterion Advertising Co., Inc., 171 Okla. 92, 42 P. (2d) 123.

The defendant next contends that the verdict of the jury is excessive. Lundy testified that the reasonable commission on a sale of oil of the kind involved herein was five cents per barrel. This testimony was brought out by the defendant on cross-examination. Defendant's evidence showed that one cent per barrel would be a reasonable commission. The question of what a reasonable commission would be was likewise a jury question. Computed on the basis of five cents per barrel, the verdict is not excessive. The defendant under this assignment, however, urges that plaintiff was entitled to recover only upon the basis of two cents per barrel, the same being the commission fixed in the memoranda of the parties of March 30th, and that the jury applied the wrong measure of damages. The question is not before us. The trial court instructed the jury as to the measure of damages without objection or exception on the part of the defendant, and fixed the measure of damages as a fair and reasonable amount which would compensate plaintiff for his services. Defendant requested no instructions as to the measure of damages.

"In the trial of a law case before a court and jury, it is the duty of counsel to give attention to the instructions which the court gives to the jury, and if in their opinion the court has failed to give a proper instruction covering the measure of damages, to call attention of the court to such question, to request or submit appropriate supplementary instructions on this subject; and where counsel content themselves by saving a mere technical objection and fail to timely present a requested instruction embodying their theory of the applicable law as applied to the evidence, the cause will not be reversed where it appears that such error, if any, is based solely upon an improper instruction covering such measure of damages, provided said instructions, taken as a whole, did not mislead the jury and produce a verdict against the evidence." Oklahoma Ry. Co. v. Boyd, 167 Okla. 151, 28 P. (2d) 537.

Having silently, at least, acquiesced in the measure of damages given to the jury by the court, we do not feel that defendant is now entitled to assail the verdict as excessive, because it is not in accord with another and different measure of damages not submitted to the jury.

The last assignment of error of defendant urges that this cause should be reversed because the court of common pleas of Tulsa county "died."

We find no prejudicial error, and the judgment of the lower court should be, and is, affirmed.

The Supreme Court acknowledges the aid of District Judge Leroy G. Cooper in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, upon consideration, this opinion was adopted, as modified by the court.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, PHELPS, CORN, and GIBSON JJ., concur. RILEY, BAYLESS, and WELCH. JJ., absent.